## FLOYD vs. WALLACE.

1. Where the object of a cross-examination is to show bias or interest so as to impeach the witness, great latitude ought to be allowed by the Court, and questions if answered in the affirmative that might tend in that way, is not objectionable.

2. It is competent to put in evidence outside statements of a witness for the purpose of impeaching him, a proper foundation first being laid for their introduction.

3. An order of the Court of Ordinary, granting leave to defendant to sell tne timber for which the suit is brought, is admissible as evidence on the trial of the suit.

4. Admissions by the administrator, admissible to charge tue assets of intestate in his hands.

5. If a contract be made with one in his individual right, and on his own security, such person is alone liable on that contract, although a partnership existed, that recovered the entire benefit of the contract of which such contracting party was a member.

Complaint, in Burke Superior Court. Tried before Judge Holt, at the May Term, 1859.

Andrew Floyd brought suit in Burke Superior Court, against Simeon Wallace, as administrator of Isaiah Sapp, deceased, to recover a sum of money alleged to be due to Floyd, from Sapp in his lifetime, for one hundred and thirty-three thousand feet of timber, at one dollar and seventy-five cents per thousand feet.

On the trial of the case in the Court below, the following testimony was adduced, to wit:

### Evidence for the Plaintiff.

William B. Hargroves testified: That in the year 1854, as the authorized agent of Isaiah Sapp, he made a contract with the plaintiff, Andrew Floyd, by which Sapp was to give Floyd one dollar and seventy-five cents per thousand feet, for the timber which Sapp might cut on the land of Floyd, in the county of Screven; that pursuant to this contract, and after Sapp had been informed of, and ratified the contract, the witness as Sapp's agent, cut on the said lands of Floyd, one hundred and thirty-three thousand feet of good timber; that

ADMISSIONS BY ADMINISTRATOR OR EXECUTOR. "It is well settled by decisions of this court that admissions by an administrator or executor, made after he has been clothed with the trust, are admissible against the estate he represents. Sample v. Lipscomb, 18 Ga. 687; Lawson v. Powell, 31 Ga. 681; Floyd v. Wallace, 31 Ga. 688 (4)." Horkan v. Benning, 111 Ga. 127 (1). And see Lawson v. Powell, 31 Ga. 681.

CROSS-EXAMINATION. "A party has a right to make a thorough and sifting cross-examination of the witnesses called against him. Wherever the purpose is to impeach or discredit the witness, great lati-

Floyd vs. Wallace.

witness was not Sapp's partner in the timber thus cut; witness hired a negro boy, by the name of Nelson, from one Mr. Ashe, and gave his notes for the hire; Sapp's name was signed to the notes by his son Seaborn, who was directed to sign them by his mother; witness does not know whether Sapp ever ratified the act of his son in signing his name to the notes; witness and Seaborn Sapp were minors at the time; witness carried the boy Nelson with him to aid in cutting the timber; two of Sapp's hands and the boy Nelson cut steadily for about seventeen weeks, and another of Sapp's hands worked one week; witness superintended the timber cutting as Sapp's agent, and was not his partner.

Henry Hargroves testified: That Sapp wanted him to furnish provisions to William B. Hargrove and the negroes who were cutting timber for him in Screven county, in 1854; witness. asked Sapp who was to be responsible for the contracts of William B. Hargroves in hiring. negroes, buying timber, etc., as said William B. Hargroves was .a minor, to which Sapp replied, that he, Sapp, was to pay these contracts; · Sapp further told the witness, that he had authorized the said William B. Hargroves to buy timber from Floyd; with these assurances, the .witness agreed to, and did furnish provisions as desired by Sapp.

## *Evidence for the Defendant.*

James Oglesby testified: That William B. Hargroves cut timber on Floyd's land in Screven county, in the year 1854, and told witness that he had a claim on the timber, and repeatedly told him that he, Hargroves and Sapp, were partners in getting the timber; that at the request of Floyd, and in his presence, witness counted and measured the sticks of timber, of which there were 70 or 80 sticks, averaging 800 feet to the stick, and the witness is sure there was no more; the sticks were marked as timber getters mark their timber, and not in the name of Sapp; witness can not write or read writing; he knows figures but can not make a calculation; he can tell the number of feet in a stick of timber fifty feet long and twelve inches wide, to wit: 600 feet; he can not tell the number of feet in a stick of timber twenty feet long and ten inches wide; witness did not make any calculation of the quantity of timber cut on Floyd's land, but simply judged that the sticks

tude should be allowed by the court in cross-examinations. Such appears. to have been the purpose here, but to have avowed it would have defeated the object in view." Mitchell *v.* State, 71 Ga. 129 (6), 157.

INCOMING PARTNER'S LIABILITY. "In a suit against a firm, in order to bind an incoming partner with the debts and liabilities of a private person or former firm, to which the defendants succeeded in the same business, plaintiffs must show some agreement on the part of the incoming partner, upon sufficient consideration, to assume such lia-

averaged about eight hundred feet; witness counted and measured all the sticks, both burnt and unburnt; the timber had been twice burnt before measuring, and some of it was badly burned; Floyd wrote down a memorandum of the measurement; witness lives in Screven county, and was sent for or brought to Court by the defendant, who is to pay his expenses, and pay him for his time, the amount not agreed on.

Counsel for the plaintiff then proposed to prove by one Henry Hargrove, that after Sapp's death, the timber cut in Screven county, was advertised for sale by Wallace as administrator; that Wallace in passing from Burke to Screven county, said he had obtained an order from the Ordinary to sell the timber, and was then going down to sell it, and that as he returned, again, he told said Henry Hargroves that he had sold it.

Upon objection being made to this testimony, the Court excluded the same, on the ground that neither the acts or sayings of Wallace, as administrator, could bind the estate of Sapp.

Counsel for the plaintiff also offered in evidence, a certified copy of an order from the Court of Ordinary of Burke county, in the following words, that is to say:

"Upon the application of Simeon Wallace, administrator, *pendente lite*, of Isaiah Sapp, deceased, and by consent: It is ordered that he have leave to sell the stock of sheep belonging to said estate; certain timber in Screven county; and that he have leave to hire out the negro men slaves, such as he may deem to the interest of said estate.

"May Term, 1855."

Upon objection made, this order was also excluded by the Court, on the ground that the acts of Wallace could not bind Sapp's estate.

The case being submitted to the jury, they returned a verdict in favor of the defendant.

Counsel for the plaintiff then moved for a new trial of said case on the grounds following, that is to say:

1st. Because the Court erred in permitting defendant's counsel to ask William B. Hargroves, one of plaintiff's witnesses, on cross-examination, and for the purpose of impeaching him, "if he did not tell one James Oglesby, of Screven county, that he (Hargroves), had hired a negro man named

bilities and pay such debts, before he can be bound, through the new firm, to pay the old indebtedness. Ought the agreement to be, in writing as a promise to pay, the debt of a third person, quaere? Where the transfer is made by authority of the old debtor, it must clearly appear that knowledge thereof was brought home to the incoming partner, and that he acquiesced in it, before he can be bound thereby." Bracken & Ellsworth *v.* Dillon & Sons, 64 Ga. 243-4 (3, 4, 5), 253, and cases cited.

Nelson, from Ashe, for the year 1854, for the purpose of cutting timber?" Counsel for the plaintiff objecting to such a question, on the ground that the statement, if made, was irrelevant.

2d. Because the Court erred in permitting defendant's counsel, in the cross-examination of the said William B. Hargroves, to ask him, "if he did not hire said negro from Ashe, and give his note with Isaiah Sapp as security for the hire; and if he was not sued on said notes, and judgment obtained, *fi. fas:* issued against him and Sapp?" (the notes and *fi. fas.* being exhibited to the witness). Counsel for plaintiff objecting to the evidence, on the ground that the same was irrelevant and improper, with a view to impeach the witness; and on the further ground, that it did not appear that these facts were known to plaintiff either before or after the sale of the timber to Sapp.

3d. Because the Court erred in permitting counsel to introduce as evidence, the sayings of William B. Hargroves to Oglesby "about his partnership with Sapp in the purchase of, and cutting the timber." Counsel for plaintiff objecting to such sayings on the ground that they were not legal evidence against the plaintiff.

4th. Because the Court erred in repelling the order of the Court of Ordinary, and the acts and sayings of defendant offered by plaintiff's counsel as hereinbefore stated.

5th. Because the verdict is contrary to law.

6th. Because the verdict is decidedly against the weight of evidence.

7th. Because the Court erred in charging the jury, "that if they believed that Hargroves and Sapp were partners in cutting the timber, the plaintiff could not recover."

At the November Term, 1860, the presiding Judge overruled the motion and refused the new trial, which refusal is the error complained of.

JONES & STURGIS, for plaintiff in error.

BENNETT, by JACKSON, for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

1. The object of the questions propounded to the witness,

Hargroves, by counsel for defendant, the objections to which form the first and second grounds of the motion for new trial, was to elicit facts that would show the bias or interest of the witness against the defendant, or in favor of the plaintiff, and thus to disqualify or discredit the witness before the jury; for this purpose, great latitude ought to be allowed by the Court, especially as, after everything is out, it is for the jury to believe the witness or not, as they may be convinced, and as the answers, if in the affirmative, might have a tendency in that way, we can not say they were improperly allowed.

2. Although it was not competent to use the statements of the witness, Hargrove, as original evidence against the right of plaintiff to recover, still it was competent to put those statements in evidence for the purpose of impeaching the plaintiff's witness, Hargroves; a proper foundation first having been laid for the introduction of such declarations.

3. The order of the Court of Ordinary of Burke county, authorizing defendant as administrator of Isaiah Sapp, deceased, to sell the timber in Screven county, cut by intestate in his lifetime, from the land of plaintiff, ought to have been admitted by the Court as evidence, for it served two purposes, first, to show that the estate of intestate received the benefit of the timber, which was the foundation of the suit. Secondly, it would have a tendency to negative a partnership between the intestate and the witness, Hargroves, in the timber. If such a partnership existed, Hargrove, as survivor, would have been entitled to the timber, for the purpose of paying debts, etc. Hence the exclusion by the Court of that order was error.

4. The acts and admissions of the administrator ought to have been admitted by the Court as evidence against him in favor of the plaintiff. See *Sample vs. Lipscomb,* 18 *Geo.* 678; *Griffin vs. Inferior Court,* 17 *Geo.* 96; *Lawson vs. Powell,* decided at this term.

5. If it is true, as testified by William B. Hargrove and Henry Hargrove, that this timber was cut on the land of the plaintiff, upon the special contract with the plaintiff, that defendant's intestate would pay him, the plaintiff, for it, at the price agreed upon; then the plaintiff is entitled to recover of the defendant, whether there was a partnership between Sapp, the intestate, and Hargroves, the witness, in the timber or not, for that is the contract, and to hold otherwise is to vary the

contract without the assent of Sapp or the plaintiff. The rule on this subject, as well settled, is this: if a credit is given to one member of a firm on his own security only, it does not become a partnership debt, although the partnership received the full benefit of the transaction. *Buckner vs. Lee,* 8 *Geo.* 292; *Logan vs. Bond,* 13 *Geo.* 176; *Story on Part.* §139; *Welker vs. Wallace,* decided at Atlanta, Sept. Term, 1860. It follows that the charge of the Court to the jury, as stated in the seventh ground of the motion for a new trial, that "if they believed Hargroves and Sapp were partners in cutting timber, plaintiff could not recover," as applied to the facts of this case, was erroneous. A new trial must be allowed on the fourth and seventh grounds of the motion.

## JUDGMENT.

Whereupon, it is adjudged by the Court, that the judgment of the Court below be reversed on the ground: 1. In excluding from the jury the order of the Court of Ordinary, granting leave to defendant to sell certain cut timber, in Screven county, and the acts and admissions of defendant, that he was going to, and had sold the timber. 2. In charging the jury, as the law of this case, "that if they believed Hargrove and Sapp were partners in cutting the timber, the plaintiff could not recover."

The Court should have charged the jury, upon the facts of this case, "that if the contract was made with the intestate, Sapp, and the credit extended to him by plaintiff, and not to the firm, that then the estate of Sapp was alone liable for this debt, notwithstanding there might have been a partnership between Hargroves and Sapp in this timber."