### 490.  DICKS *v.* THE STATE.

1. While the court has a right to question a witness during the trial of a case, the examination must be carefully guarded so as not to violate the inhibition of the Civil Code, §4334. The examination of the witness by the court in this case was not so guarded, and amounted to a clear violation of that section.
2. Exceptions not insisted on in the argument, or covered by the brief, will be treated as abandoned.

Indictment for car-breaking, from Richmond superior court—Judge Hammond. March 30, 1907.

Argued May 27,—Decided June 20, 1907.

*A. L. Franklin,* for plaintiff in error.

*J. S. Reynolds, solicitor-general, John M. Graham,* contra.

HILL, C. J. Plaintiff in error was convicted for a violation of section 184 of the Penal Code of 1895, upon an indictment charging that he did break and enter a certain railroad box car of the Augusta Southern Railroad Company with the intent to steal valuable goods therein, and, after having so entered, did wrongfully and fraudulently take and carry away, with intent to steal the same, two boxes of raisins, the property of the said railroad company. His motion for a new trial was overruled, and the case is before this court for review. Exceptions to the judgment of the court in overruling a plea in abatement, and in admitting certain testimony over the objection of the defendant, are not alluded to in the brief filed in this court, and will therefore be treated as abandoned. Two points are presented for the decision of this court.

1. It is complained that the presiding judge erred, in that he intimated to the jury his opinion of the defendant's guilt, and what had been proved, as follows: During the progress of the trial and after the defendant had made his statement, the detective who made the arrest and who discovered the stolen property was recalled, and after he had been examined by counsel for both the State and the defendant the court continued the examination as

follows: "Q. Was he told what he was being arrested for? A. We carried a search warrant, and told him we had a search warrant for his place and for him; and he never did make any explanation as to where the goods came from or why he was in possession of them. . Q. Did he make any denial? A. No, sir. Q. Did he see these raisins? A. Yes, sir. Q. Said nothing about Aaron Sinkfield at that time? A. No, sir; he did not. Q. Were you present at the preliminary hearing? A. I was. Q. Did he make any denial there? A. Not that I heard. Q. Have you ever heard of Aaron before in connection with this case? A. No, sir; I think not." Then the witness was cross-examined, and the court asked him the following questions: "Q. Explain to the jury where John Dicks was when you and the gentleman with you discovered this first box of raisins in his house. A. He was there in the room. Q. Did he or not see you put your hands on the box of raisins and take them into your custody? A. I don't see why he couldn't. He was right there in the room, dressing. Q. Did he see you with the two boxes of raisins? A. Yes, sir. Q. Did he see you remove them from his house? A. I can't say that he did, because we ran him right off to jail. Q. Did he see you with these boxes of raisins at the time? A. Yes, sir. Q. Did he offer you any explanation? A. No, sir. Q. Did he say he got them from Aaron Sinkfield? A. He did not. Q. Were those raisins at the magistrate's office? A. Yes, sir. Q. Did he say there at the magistrate's office that he got them from Sinkfield? A. No, sir; he did not. Q. Have you ever seen him where those boxes of raisins were, at police headquarters or anywhere else, when he was being charged with this crime? A. Yes, sir; they were at the magistrate's there, and he was faced with them there. Q. Did he offer any explanation? A. No, sir. Q. Did he offer the explanation that Sinkfield had come to his house and asked permission to leave them there? A. No, sir." Defendant's counsel continued to cross-examine the witness, and when he finished the court asked the following questions: "Q. How long did John Dicks stay in jail before he had a preliminary and went out on bond? A. I don't remember how long. I think he was there probably three weeks. Q. Did you see him during that time? A. Yes, sir. Q. Did he offer you any explanation? A. No, sir; none at all. He told me to go to his lawyer."

13

To illustrate the pertinency of the foregoing examination it is only necessary to state that the only evidence of the defendant's guilt was the presumption arising from the possession of the stolen property soon after the commission of the crime, without a satisfactory explanation of such possession. This detective, three days after the raisins were stolen from the car, found them in the defendant's house. Neither at that time, nor on the subsequent occasions alluded to by the court, when he had an opportunity to do so, did he ever make any explanation at all of his possession. He delayed his explanation until he made his statement to the jury on the trial; then stating that one Aaron Sinkfield left them at his house the night they were stolen. The iteration and reiteration by the court of this strongly incriminating omission on the part of the defendant must have forcibly impressed the jury with the idea that in the opinion of the judge the explanation of his possession of the stolen goods, as then given by the defendant, was a fabricated afterthought. The emphasis which the judge by his questions gave to this significant failure of the defendant on the repeated occasions before the trial, when it was to his interest to have promptly made an explanation, and when it was reasonable to think that he would have done so, indicated that the judge had very grave doubts of the truth of the one made. This question has been fully covered by the recent decision of this court in the *Sharpton* case, 1 *Ga. App.* 542, 57 S. E. 929. We can only repeat what we said then—that while the court can with propriety ask questions of a witness on the stand for the purpose of bringing out the facts of the case, such practice is imprudent and unsafe, and will invariably result in the imperative grant of a new trial when such examination is at all extended and on the vital points of the case. The rather lengthy examination of the witness above set out, calling repeated attention to the weak point in the defense, was a clear, though doubtless an unconscious, violation of the right of the defendant to have his guilt determined by the jury without the slightest assistance from the court.

2. It is insisted that there was no evidence of a "breaking" of the car. We have carefully examined the brief of evidence, and we find that, while the evidence on this point is weak and not entirely satisfactory, yet there is some evidence to support the verdict as to this fact, and the trial court was satisfied.

*Judgment reversed.*