### 16170. HOWARD *v.* MONTEZUMA FERTILIZER COMPANY.

1. The verdict being sustained by the evidence and approved by the trial judge, this court is bound to overrule the general grounds of the motion for new trial.
2. The defendant's letter to the fertilizer company, in which he promised to "take care of" the note afterwards sued on in this case, was properly admitted in evidence.
3. The admission in evidence of the small can of fertilizer exhibited to the defendant when he was on the witness stand, and as to which he was interrogated for the purpose of testing the accuracy of his knowledge as to fertilizer, was not error.
4. Where in ruling out evidence in the early stages of a case the court makes remarks claimed by counsel to be highly injurious to his client's cause, counsel can not remain quiescent until after an adverse verdict, and then, in a motion for a new trial, avail himself of the court's remarks.

5. There is no merit in the 5th special ground of the motion for a new trial.
6. The excerpt from the court's charge, referred to in the 6th special ground of the motion for a new trial, discloses no error.
7. The use of the words "manure salts," in the court's charge, where "muriate of potash" should have been used, was clearly a mere inadvertence, which worked no injury to the defendant.

DECIDED OCTOBER 6, 1925.

Complaint; from city court of Americus—Judge Harper. December 2, 1924.

*Wallis & Fort,* for plaintiff in error.

*Jule Felton, Jule W. Felton,* contra.

LUKE, J.   Montezuma Fertilizer Company sued J. W. Howard on a promissory note for $10,429.42, besides interest and attorney's fee.   Defendant admitted the execution of the note and notice of claim for attorney's fee, and assumed the burden of proof; the substance of his plea being as follows:   What defendant contracted to buy, and what was actually delivered to him, was 10 tons of acid and 172 tons of 8-4-4 fertilizer, the ingredients of the latter being acid derived from phosphate rock, nitrogen derived from nitrate of soda and cottonseed meal in the proportion of 1% from the former and 3% from the latter, and potash derived from muriate of potash.   Plaintiff failed to register with the commissioner of agriculture any 8-4-4 brand of fertilizer having its nitrogen derived from cottonseed meal and its potash from muriate of potash; the 8-4-4 fertilizer actually registered under the name and brand of "8-4-4" having as its sources of nitrogen blood, tankage, nitrate of soda, and sulphate of ammonia, and as its source of potash, manure salts.   Wherefore the contract sued on was illegal and void.

1.   Defendant adduced evidence in support of his plea.   Plaintiff admitted that it registered only one brand of 8-4-4 fertilizer in 1920, but introduced evidence to show that defendant bought 8-4-4 fertilizer without specifying from what sources its nitrogen and potash were to be derived.   It also adduced evidence that the 8-4-4 fertilizer delivered to defendant was the same fertilizer registered by it under that brand with the commissioner of agriculture.   The jury having resolved the conflicting evidence in favor of plaintiff, and the trial court having declined to disturb the verdict, this court is bound to hold that there was no error in overruling the general grounds of the motion for new trial.

2.   Defendant contends that the court erred in admitting in evidence a letter written by him in October, 1922, to the president of the fertilizer company, wherein he stated that the company was good to him; that he was not able to pay the note, but would take care of it as soon as he could; that if he was pushed he would "do something" to take care of himself; and that he was not dictating, but that it would be best to let the note stand until he could get to it.   Defendant contends that since it did not appear that he knew at the time the letter was written that the fertilizer sold him was not registered, the evidence was irrelevant, immaterial, and calculated to prejudice the jury against him and divert their minds from the real issues in the case.   It was said in *McGriff* v. *McGriff,* 154 *Ga.* 567 (115 S. E. 21), that "a party may show anything which may, in the slightest degree, affect the credit of an opposing witness."   The defendant was the only witness for himself.   His evidence was in sharp conflict with the testimony of witnesses for plaintiff.   This letter was written at no great time before the suit was brought.   We think it was proper for it to go to the jury.

3.   Movant contends that the court erred in admitting in evidence a small can of guano which a witness had identified as containing eight parts of acid phosphate, three parts of cottonseed meal, four parts of manure salts, and one part nitrate of soda, and which was exhibited to the defendant while on the stand, and about which he was examined for the purpose of ascertaining whether he could tell by inspection whether this mixture contained any cottonseed meal, muriate of potash, or nitrate of soda. The objection was that the evidence was irrelevant and immaterial to the issue, in that it could not illustrate whether the fertilizer delivered to defendant was registered.   Defendant had sworn in effect that he could tell by inspection whether the fertilizer sold him had cottonseed meal in it, and from what source the potash was derived.   The mixture was introduced to test the accuracy of defendant's testimony, and was admissible as against the objection made.

4.   After defendant had sworn that he had lost a tag that came off of the fertilizer delivered to him, his counsel asked him to tell the jury what was on the tag.   Plaintiff's counsel objected, upon the ground that the tag was the highest and best evidence,

stating in this connection that there were 172 of these tags. The court's ruling was: "I don't think it would be permissible to show what was on one tag, unless it is shown that all of the tags were exactly alike." In the motion for a new trial the defendant excepted to these remarks, upon the ground that they were calculated to impress the jury with the necessity of defendant's showing that all the tags were similar in statement as to the sources from which the ammonia and potash were derived, before he could defeat the suit, whereas such was not the case, for the reason that the contract declared upon was entire. Later, in answering a question propounded by his counsel, defendant swore: "I looked through it [the fertilizer] as it was loaded on the wagons, and after it got into the fields. . . I looked at the guano in every car that it came in, checked it myself. I have looked for those tags and have not been able to find them; just didn't take care of them. This was the season of 1920. 8-4-4 appeared on the sacks; that didn't appear on the tag. The analysis was on the tag,—meal and soda and potash." The defendant, on cross-examination, swore also: "I know what was on the sack and tag, and I know that it had cottonseed meal and potash in it. . . I have handled it for a long time. Anybody can tell when it's got cottonseed meal in it. I can tell what kind of potash is in it." Giving this evidence a reasonable construction, we think it was in effect the same as that ruled out, and the allowance of it in evidence should very much mitigate the alleged evil effect of the court's remarks. Furthermore, we are of the opinion that counsel should have taken some steps to avoid the alleged hurtful effect of these remarks by requesting the court to withdraw them at once, or that a mistrial be declared, or that the jury be instructed to disregard them. The facts are not parallel in the two cases, but the principle enunciated in *Moore* v. *McAfee,* 151 *Ga.* 270 (11) (106 S. E. 274), is entirely applicable to this ground of the motion for a new trial. In that case it is said that "A party can not remain quiescent until after verdict and then avail himself of the remarks made by the court, in a motion for new trial, where the verdict is adverse." The remarks in question were made in the early stages of the case. No attempt was made to correct the injurious effects attributed to them. The court correctly overruled this ground of the motion for new trial.

5.   During the final argument of counsel for defendant he had brought into court in different containers what he said was acid phosphate, cottonseed meal, nitrate of soda, and muriate of potash, which substances had not been identified by evidence. Counsel proposed to mix them in the presence of the jury, in designated proportions, and demonstrate that the meal, as well as the other ingredients, could be ascertained by mere physical inspection. The court ruled that counsel could not illustrate the question under consideration by materials that had not been introduced in evidence and allowed. Under the circumstances set out, neither argument nor authority is necessary to demonstrate the correctness of the court's ruling.

6.   Ground 6 of the motion for a new trial, complaining of an excerpt from the charge of the court, is without merit. The excerpt, so far as it went, correctly stated the plaintiff's contentions, and contained no error whatsoever.

7.   Complaint is made in the last ground that the court erred in stating the defendant's contention to be that he claimed that the fertilizer delivered to him derived its potash from manure salts. The fact that the court several times used the words "muriate of potash," in this connection, demonstrates clearly that the use of the words "manure salts" was a mere inadvertence which could have worked no injury to defendant.

For no reason assigned did the court err in overruling the motion for a new trial.

*Judgment affirmed.   Broyles, C. J., and Bloodworth, J., concur.*