## 18848. SPIVEY v. THE STATE.

DECIDED MAY 17, 1928.

*Chastain & Henson, Quincey & Quincey,* for plaintiff in error.
*A. B. Spence, solicitor-general,* contra.

LUKE, J. Elisha Spivey was charged with the murder of John
Wiggins, and was convicted of voluntary manslaughter. The court
overruled the defendant's motion for a new trial, based upon the
usual general grounds and upon seven special grounds, and the
movant excepted. Each of the first five of the special grounds al-
leges that the questioning of various witnesses by the court was
error. Wherefore, we shall discuss at length only the first of these
grounds.

As a background for the first special exception, we deem it
proper to state the following general outline of the case: The de
fendant and his wife, Thelma, had separated, Thelma living at the
home of her parents, Mr. and Mrs. J. M. Wooten, and the defend-
ant living several miles away. It had been agreed that first one
and then the other of the young people should keep their baby. On
May 4, 1927, Thelma went to get the baby. The defendant stated
that he told his wife to go on home with the baby and not to be

driving around after dark with John Wiggins or any one else. Thelma, with the baby, her younger sister, and John Wiggins drove up to the home of Mr. and Mrs. Wooten in a touring car shortly after dark. The defendant had preceded the others by only a very short time, and had just asked Mr. and Mrs. Wooten about the baby, when Wiggins' automobile, headed in the same direction, drove up to within a few feet of the rear of the defendant's car and stopped. The State's evidence was to the effect that the defendant got out of his car, walked close to where Wiggins was sitting in the other automobile, cursed him, and shot him dead, and that, after firing his pistol twice, the defendant shot his sister-in-law after she had gotten out of the automobile and had started towards her home. The defendant stated that the girl was hit in the car. It was in evidence that the deceased had threatened to kill the defendant before he would let the latter run over him, and that a pistol was found on the left end of the front seat of the automobile where Wiggins was sitting when he was shot. The defendant stated that he was worried about his baby; that Wiggins had threatened him; and that when he approached the car his wife and baby were in, the deceased reached for the pistol to kill him, and he shot to save his life.

Ground 1 of the amendment to the motion for a new trial follows: "The court erred in the trial of said case by propounding in the presence of the jury the following questions to the State's witness, Mrs. J. M. Wooten, while testifying for the State, and eliciting from her the answers as hereinafter set out to said questions so propounded by the court, to wit: Q. Did you see him after his hands were up? Did you see the body fall? A. No, sir; I didn't see the body fall. You see, the car was full of smoke. Q. Is that the last impression you have in your mind of what you saw? A. Well, I just saw the car full of smoke, and heard the reports of the pistol, you know. Q. I mean, with reference to the man who was killed, what was his position, the last you saw before it was obscured by the smoke. A. Why, he was sitting up the last I saw him. I didn't see him fall. Q. Was it then that his hands were up? A. I don't know whether it was then. I suppose it must have been, because I couldn't have seen his hands after he fell over. Q. How far above his head were his hands? A. Just about like this (illustrating), like he might have just throwed

them up. I don't know whether he tried to get his pistol or not. Q. Was that about even with his head?—Mr. Quincey: I didn't understand her answer, your honor, just what she said in reply to your question. The court: I think I understood her. Mr. Quincey: But I want the jury to understand it. The court: All right, sir, you may examine her on cross-examination. Mr. Quincey: I just wanted her to say what she understood. The court: I am not sure I understand you, Judge. I asked her how high his hands were, and she said about like this. Mr. Quincey: I understood her to start to say she didn't know whether he went to get his pistol or not. The court: She didn't say anything about a pistol at all. Mr. Quincey: That is what I understood, your honor. Mr. Chastain: May it please the court, I think the stenographer's notes will show that she did say something about a pistol. Q. By the court: Did you say anything about a pistol? A. I don't know whether he had started to get a pistol or not, because I couldn't see from where I was. Elisha, Mr. Spivey, was between me and him, and I couldn't tell what he was doing until I just saw the hand. Q. The question I asked you was how high he threw his hands when you saw his hands go up? A. Of course, I couldn't tell you just exactly how high; but then I saw his hands up. Q. How high were they when you saw them? A. Well, it looked like he just throwed them up like this (illustrating). Q. Was that above his head? A. No, sir. Q. How high with reference to his head? A. Well, it seemed like they were just throwed up like that (illustrating). Q. As high as his head? A. I don't know whether it was as high as his head or not, because I don't remember."

The Civil Code (1910), § 4863, and the Penal Code (1910), § 1058, inhibit the trial judge, in any case, from expressing or intimating his opinion as to what has or has not been proved, or as to the guilt of the accused, and provide that a violation of this provision shall be cause for a new trial. "The fact that the trial judge asked questions of witnesses is not cause for new trial, unless the complaining party suffered prejudice thereby" (*O'Connell* v. *State*, 5 *Ga. App.* 234 (5), 62 S. E. 1007), but "trial judges should usually leave the examination of witnesses to the attorneys conducting the case" (*Ray* v. *State*, 4 *Ga. App.* 67 (5), 60. S. E. 816) ; and where the judge interrogates a witness at length upon

any vital question in a felony case, he takes a grave risk of intimating or expressing an opinion on the evidence, and of bringing about a reversal by the reviewing court. In this connection, we quote from *Sharpton* v. *State,* 1 *Ga. App.* 542, 548 (58 S. E. 60), as follows: "It is almost an intellectual impossibility for a judge to engage in an examination of a witness on vital questions of the case on trial, without in some manner and to some extent indicating his own opinion. Every practitioner knows how eagerly alert jurors are to every utterance from the bench, and how sensitive is the mind of the juror to the slightest judicial expression. Therefore, while the trial judge has the right to ask questions of the witnesses whenever necessary to bring out the truth of the case, we are not prepared to say that it is his duty to do so; and, in exercising the right, he should be careful not to intimate any opinion upon the facts, or use any expression calculated to prejudice the rights of either party." See *Taylor* v. *State,* 2 *Ga. App.* 723 (59 S. E. 12); *Dicks* v. *State,* 2 *Ga. App.* 192 (58 S. E. 335); *Brown* v. *State,* 11 *Ga. App.* 164 (74 S. E. 1002); *Joyner* v. *State,* 12 *Ga. App.* 217 (77 S. E. 9); *Nobles* v. *State,* 13 *Ga. App.* 710 (79 S. E. 861); *Murphy* v. *State,* 13 *Ga. App.* 431 (79 S. E. 228); *Harris* v. *State,* 61 *Ga.* 359 (1); *Gillis* v. *Bowman,* 132 *Ga.* 762 (64 S. E. 1096); *Washington* v. *Washington,* 145 *Ga.* 814 (90 S. E. 43).

While we know that in propounding the foregoing questions the able judge was only seeking to bring out the truth of the case, yet we can not escape the conclusion that in so doing he impressed the jury with the idea that he had scant faith in the defense set up by the accused. The State's main contention was that the deceased was killed in cold blood; while the defendant's contention was that Wiggins was trying to get a pistol from the automobile seat with which to shoot, and that he, the defendant, shot to save his own life. If the deceased had his hands above his head when he was shot, he was not at that time trying to get a pistol from the seat of the automobile, and was not seeking to harm the defendant. Wherefore we think that the court's repeated questions in regard to Wiggins' hands, especially in the form in which some of the questions were put, were calculated to lead the jury to believe that the court discredited the defendant's only defense; and this was harmful error.

However, since all this occurred before the case went to the jury,

we place the reversal of the judgment of the trial court on special ground 7 of the motion for a new trial, in which it appears that counsel made a timely motion for a mistrial because of the questions set out in the first special ground. In this connection see *Moore* v. *McAfee,* 151 *Ga.* 270 (11) (106 S. E. 274); *Perdue* v. *State,* 135 *Ga.* 277 (69 S. E. 184); *Tanksley* v. *State,* 35 *Ga. App.* 189 (132 S. E. 263); *Howard* v. *Montezuma Fertilizer Co.,* 34 *Ga. App.* 411 (4) (130 S. E. 72).

In view of the foregoing, we deem it unnecessary to discuss special grounds 2, 3, 4, and 5. Suffice it to say that we would not be disposed to reverse the judgment on any of them.

Error is alleged in ground 6 because, after nine witnesses had testified to the good character of the accused, the court excluded from the jury the testimony of each of twenty-five other named witnesses who would have testified to the good character of the accused. We can conceive of cases where it would be an imposition on the court and a hindrance to justice for countless witnesses to be allowed to testify to a fact already established. However, we do not think this is such a case. The main contention of the State was that the accused was a cold-blooded murderer, while that of the defendant was that he killed the deceased in order to save his own life. In the case of *Seymour* v. *State,* 102 *Ga.* 803 (30 S. E. 263), it was said: "Evidence of good character is not admitted as a mere make-weight, but as evidence of a positive fact, and may of itself, by the creation of a reasonable doubt, produce an acquital." See also *Shropshire* v. *State,* 81 *Ga.* 589 (8 S. E. 450); *Taylor* v. *State,* 13 *Ga. App.* 715 (79 S. E. 924).

What effect upon the jury the testimony of one or more of the witnesses who were not allowed to testify would have had can not be surmised. It might have been nil, or it might have had great weight. Our observation is that it does not ordinarily take character witnesses long to give their testimony; but, even if this were not true, the right of a defendant accused of crime to present his defense fully is of vastly more importance than the expedition of trials. We think this ground of the motion discloses reversible error, and so hold.

*Judgment reversed. Bloodworth, J., concurs in the judgment of reversal, but does not agree to all that is said in the opinion. Broyles, C. J., dissents.*