## FAIR *v.* THE STATE.

No. 6887. APRIL 13, 1929.

*Len B. Guillebeau*, for plaintiff in error.
*George M. Napier*, attorney-general, *John A. Boykin*, solicitor-general, *T. R. Gress*, assistant attorney-general, *E. A. Stephens*, and *J. W. LeCraw*, contra.

RUSSELL, C. J. The plaintiff in error was convicted of the offense of murder, and sentenced to die by electrocution. He made a motion for a new trial, which was refused, and the exception is to that judgment. As presented by the evidence, it is the contention of the State that the plaintiff in error unlawfully shot a man named Griffin and was endeavoring to escape, and that he shot and killed J. E. McDaniel, a police officer of the City of Atlanta, who was trying to arrest him, and that he shot the officer for the purpose of evading an arrest and to effect his escape. As appears from the record, it is the contention of the plaintiff in error that he was fleeing from the scene of the shooting of Griffin, not for the purpose of escaping, but in order to reach the officer and get in the store behind the officer for protection from Griffin and his companions, and for protection from the crowd who were crying out against him; that he knew that Griffin and two other men had been looking for him to shoot him down on sight, and that they had shot down and dangerously wounded a man named Zink under

the impression that he was the plaintiff in error; that as he was approaching the door of a store on Decatur street, where officer McDaniel was standing, the officer stepped forward and the two collided, and the pistol which plaintiff in error was holding in his hand was caught between him and the officer and accidentally discharged in the scuffle which followed; and that he at no time had any intention to shoot the officer, but that the shooting was accidental. There was evidence in behalf of the State, indicating that the shooting was not accidental; and there was also testimony that there was a scuffle between the officer and the accused as they came into the store from the street.

The amendment to the motion for a new trial contains eight grounds. These will be considered in reverse order. In ground eight complaint is made that the court permitted the solicitor-general, over the objection of the defendant, to argue to the jury that "statistics compiled by reliable authorities, published in a book which he (the solicitor-general) had and could produce, showed that Georgia had 561 murders in 1922," it being assigned as error that "the court permitted the solicitor-general in his argument to get before the jury for their consideration alleged facts which were irrelevant, immaterial, inadmissible, and highly prejudicial to the defendant, and that the argument based on said alleged facts (the claim that there were 561 murders in Georgia in 1922) was highly prejudicial to the defendant in that both the assistant solicitor-general and the solicitor-general in their argument commented on the large number of murders in Georgia, and that "lax law enforcement was largely responsible for crime conditions in Georgia." It appears from this ground of the motion, as approved by the court, that both the assistant solicitor-general and the solicitor-general argued to the jury that the defendant was guilty of murder, and insisted and urged the jury to bring in a verdict finding the defendant guilty of murder, without recommendation. In the course of the argument of the solicitor, after he had been allowed to state and argue to the jury that statistics showed 561 murders in Georgia in 1922, he urged that the only proper verdict in this case would be a verdict finding the defendant guilty of murder, without recommendation, which meant the death penalty; and further stated that a life sentence would be almost a farce, that in and after three years the defendant would be eligible for parole and would make

application for parole; that he (the solicitor-general) would be having to go to the capitol to oppose defendant's application for parole. "Movant says, in view of the argument by the solicitor-general and his assistant as above set out, that the ruling of the court allowing the solicitor-general to state that statistics showed 561 murders in Georgia in 1922, and allowing the solicitor-general to comment on these alleged statistics, was very harmful and prejudicial to the defendant; and movant contends that a new trial should be granted him because the court permitted such statement and argument to the jury, and because the court thereafter erred in overruling defendant's motion for a mistrial, as hereinbefore set out in this ground of this amendment."

Section 4957 of the Civil Code of Georgia provides: "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the same, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the plaintiff's attorney is the offender." Even before the adoption of the Code of 1863, Judge Nisbet, in *Mitchum* v. *State,* 11 *Ga.* 615, and *Berry* v. *State,* 10 *Ga.* 511, 522, announced in language of unanswerable logic and judicial inspiration the proper rule applicable to and governing the argument of counsel, and stressed the point that matters not in evidence were not proper subject for argument and could not afford the basis for a jury's verdict. In *Washington* v. *State,* 87 *Ga.* 12 (3) (13 S. E. 131), this court held that "On the trial of an indictment for arson, it was error to allow the solicitor-general, over objection of defendant's counsel, to state, in his concluding argument, that frequent burnings had occurred throughout the country, and to urge the jury, in consequence thereof, to strictly enforce the law in the case then on trial." Upon this error the judgment refusing a new trial was reversed. Mr. Justice Lumpkin, delivering the unanimous opinion of this court, said: "It is the well-settled policy of this court that counsel in the argument of cases should confine their remarks to the law and the evidence, and that in no instance should they be permitted to comment upon extraneous facts prejudicial to the interests or rights of a party, over his objection, unless such facts be of a kind of which

judicial cognizance may be taken without proof." In support of the "wisdom of this rule" the learned Justice cited Weeks on Attorneys, § 112, and Ferguson *v.* State, 49 Ind. 33, among other authorities. In the latter case the same point was before the Supreme Court of Indiana as is here now before us, and the court held: "On the trial of an indictment for murder, it is error for counsel for the State, in argument to the jury, to comment on the frequent occurrence of murders in the community and the formation of vigilance committees and mobs, and to state that the same are caused by laxity in the administration of the law, and that they should make an example of the defendant, and for the court, upon objection by the defendant to such language, to remark to the jury that such matters are proper to be commented upon." Judge Lumpkin also cited, in the *Washington* case, the rulings in *Bennett* v. *State,* 86 *Ga.* 401 (12 S. E. 806, 12 L. R. A. 449, 22 Am. St. R. 465), Tucker *v.* Henniker, 41 N. H. 317 and *Towner* v. *Thompson,* 82 *Ga.* 740 (9 S. E. 672), in which Chief Justice Bleckley said: "No court, however, should tolerate counsel in stating any fact in argument as to which there is no evidence, unless it be some fact which can be noticed judicially without proof; certainly that Mr. Towner was born in Illinois is not one of this class of facts. There should have been no allusion made to it in argument." Mr. Justice Lumpkin, completing his review, said as to Washington's case, as I think should be said here, "In the case now under consideration, the fact that frequent arsons had occurred in the community, if such was the fact, could have no possible bearing upon the question whether or not the defendant maliciously set fire to the guardhouse in Albany."

The court in this case also ruled as to whether the fact, if true, that there were 561 murders in Georgia in 1922 was not one of which the court or jury could take judicial cognizance. It can not be said that all people, unlettered as well as educated, and non-readers as well as close readers, know such facts as how many murders or other crimes are committed in a certain State in a certain year, and the court could not correctly hold that the statistics to which the solicitor-general referred were matters of such common knowledge that the court would take judicial cognizance of their existence without proof. As to this, in *Washington's* case it was held: "Certainly the fact he undertook to state was

not one of such public notoriety or matter of history as that the court or jury could take judicial cognizance thereof. It was the duty of the court, when the objection was made by the defendant's counsel, to promptly and unequivocally declare that such an argument was improper, and require the solicitor-general to desist therefrom." Whatever may be the rule observed in our present practice of this era, it is at least memorable as an instance in which Georgians can feel a conscious pride that in the case of Tucker *v.* Henniker, supra, cited by Justice Simmons in the *Bennett* case, supra, the Supreme Court of New Hampshire adopted almost bodily Judge Nisbet's opinion in the *Mitchum* case.

■ In the opinion of the majority of the court, none of the remaining assignments of error require a reversal of the lower court.

■ In view of the error set forth in the first headnote, the court erred in overruling the motion for a new trial.

*Judgment reversed. All the Justices concur.*

BECK, P. J., and GILBERT, J. We concur in the judgment of reversal on the eighth ground of the motion for a new trial under the ruling in *Washington* v. *State,* 87 *Ga.* 12 (3) (supra), where it was held that "On the trial of an indictment for arson, it was error to allow the solicitor-general, over objection of defendant's counsel, to state, in his concluding argument, that frequent burnings had occurred throughout the country, and to urge the jury, in consequence thereof, to strictly enforce the law in the case then on trial."

RUSSELL, C. J. In the foregoing opinion I have endeavored to express the opinion of the court with reference to the eighth ground of the motion for a new trial; but I think it is not improper for me to deal fully with each of the other grounds. I concur in the judgment of reversal, but dissent from the ruling expressed in the second headnote.

The seventh ground of the amendment to the motion for a new trial complains of a violation of section 1058 of the Penal Code of 1910 and section 4863 of the Civil Code, which declares: "It is error for any or either of the judges of the superior courts of this State, in any case, whether civil or criminal, or in equity, during its progress, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved, or as to the

guilt of the accused; and should any judge of said court violate the provisions of this section, such violation shall be held by the Supreme Court to be error, and the decision in such case reversed, and a new trial granted in the court below, with such directions as the said Supreme Court may lawfully give." "Movant says that a new trial should be granted him because of a prejudicial remark by the court in the presence of the jury, as hereinafter set out in this ground of the amendment, said prejudicial remark being as follows, to wit: 'But Mr. Boykin will be permitted to stress the other point that he has outlined as a part of his argument to the jury.' Movant contends that the use of the word 'stress' by the court tended to express or intimate, and did express or intimate, to the jury an opinion of the court as to the guilt of the defendant, and that the use of the word 'stress' was highly prejudicial to the defendant, in that it unduly impressed upon the minds of the jurors the argument of the solicitor-general and tended to convey to the jury the idea that the court considered the argument of the solicitor-general of such importance that he should 'stress' the point that he was making." The language of the court above set out is contained in the following, which took place in the presence of the jury:

"Mr. Guillebeau: The solicitor-general is undertaking to discuss to the jury, as fact, certain things regarding the family of the deceased, and there is no evidence in this record as to whether or not the deceased even had a family, much less evidence of any financial condition; and we object to any remarks pertaining to the financial condition of the family, or members of the family, because there is no evidence of that kind in the record, and such remarks could serve no purpose except an effort to inflame the mind of the jury against the defendant.

"The court: What was the remark you claim to have made yourself, Mr. Boykin, that is being objected to?

"Mr. Boykin: I told the jury it was a pity that they couldn't see with their own eyes the enactment of crime, that words could only translate visions, that they couldn't see it themselves, they would have to listen to the witnesses in order to try to translate what they see themselves, that they couldn't see the suffering of the victim, they couldn't examine his thoughts or know his emotions while he was conscious of the fact that death was approaching, and that he was leaving a dependent wife and children.

"Mr. Guillebeau: And didn't you add further, without sufficient property and sustenance—

"Mr. Boykin: No, I didn't say anything about that, I stated what I said.

"Mr. Guillebeau: We ask your honor to instruct the jury not to consider the discussion of these things, because there is no evidence of these things, and we ask that your honor instruct the jury not to consider such arguments from the solicitor-general.

"The court: I'll ask that any words with reference to dependents or others that might remain after death will not be considered; but Mr. Boykin will be permitted to stress the other point that he has outlined as a part of his argument to the jury. The question of whether some one remains who is dependent on him, the question of dependents is not material to the case; it is the facts that were incident to the commission of the alleged offense that are pertinent, and that is admissible, only. You may proceed, with that omission, Mr. Boykin."

The ruling of the court excluding all argument with reference to dependents or others that might remain after death was in accordance with what has been said in the preceding division of this opinion. We have quoted the assignment of error in full, and it is plain that it is of such nature as not to present for our consideration whether or not the use of the word "stress" amounted to an intimation of opinion as to anything in the case; and if so, it does not appear to what it referred; what the other thing that the court gave Mr. Boykin permission to stress was is not so presented as to enable the court to determine the merits of the exceptions actually sought to be presented.

It appears from the recitals of fact in the sixth ground of the motion for a new trial, as approved by the court, that defendant's counsel was entitled to the concluding argument in the case. After defendant's counsel had finished the concluding argument and had taken his seat and was waiting for the court to charge the jury, the solicitor-general arose, and addressing the court, said:

"Mr. Boykin: Mr. Guillebeau has made the statement to the jury, your honor—

"Mr. Guillebeau: I think the jury ought to be retired—

"Mr. Boykin: No, I want the jury to hear my motion Mr. Guillebeau has made his statement to the jury, he has made the

arguments to the jury—in fact, he has repeatedly stated to this jury that Mr. McDaniel was at the hospital, conscious, able to speak and didn't speak, and didn't say anything to indicate that this man wilfully and intentionally killed him. Now, that's a misleading statement to this jury. Mr. Guillebeau as a lawyer understands that the rule of evidence doesn't permit hearsay testimony. There is nothing Mr. McDaniel could have said to his wife, relatives, doctors, friends, or anybody else that would have been admissible, unless he was conscious, at the time, that he was in a dying condition. The evidence of the doctor was that he wasn't apparently conscious of the fact that he was in a dying condition, that he was rational, able to talk and did talk, up until the time of his death. Now Mr. Guillebeau has put us in the attitude by that argument of failing to put in evidence that we could have put in, according to the way he has argued to the jury; whereas, as a matter of fact, every rule of law would preclude us from putting that evidence in, and he knows it perfectly well; and if we had offered it, he would have objected to it; and I don't think those kind of arguments or speeches ought to be allowed to go to the jury without challenge— he is in conclusion, and he didn't have any right to argue those questions.

"The court: You may reply to the court, Mr. Guillebeau, but Mr. Boykin's argument, his remarks, were addressed to the court, in the presence of the jury. Now, you may reply to it in the presence of the jury.

"Mr. Guillebeau: As your honor knows—the record will bear me out, I proved by their own witness, the doctor from the Grady Hospital, that Mr. McDaniel lived from Thursday afternoon until Sunday morning, conscious, rational, and talking the most of the time. I commented on the fact that they never brought us here any dying declaration from him; and if Mr. Boykin doesn't know enough law to know that he could introduce a dying declaration in this case, it is about time he should study some.

"The court: What is necessary to constitute a dying declaration?

"Mr. Guillebeau: What is necessary?

"The court: Yes?

"Mr. Guillebeau: A statement from a man who is in the article of death, or in a dying condition, who is conscious of that condition.

"The court: Now, suppose Mr. McDaniel had made a statement as to what he contends the facts were; but suppose at the time he did it he didn't believe he was going to die; would it be admissible?

"Mr. Guillebeau: It would not be admissible; but my position is that, with a man mortally wounded, like he was, a man who was conscious, who was rational, and a man who was going to his death, and a man who made the dying statement that Mr. Stephens brought out in his argument, that he was glad that he didn't shoot him, as he went to his Maker—they brought us that as an argument from opposing counsel—here's what I argued to the jury, and I tried to be fair, and I tried to be reasonable: Here was a man in a dying condition, there for two days, nobody expected him to get well —rational, conscious, and talking, and not a word from him, and not a word as to why there wasn't a word from him, it wasn't proved—

"The court: Is it in evidence to the effect that Mr. McDaniel was conscious of the fact that he was in a dying condition and then made a statement, in view of the fact that he knew he was in a dying condition? Is there any evidence that he did that?

"Mr. Guillebeau: Your honor, I don't know just what the details of the evidence are—

"The court: Now, suppose this: suppose everybody in the hospital believed Mr. McDaniel was going to die, but he didn't believe it, and suppose he had talked all the time up until his death; would what he said be admissible?

"Mr. Guillebeau: It would not, your honor. But here's what I was arguing: That there was no statement, and they didn't account for any reason why they never brought any statement; and if they have got any statement from Mr. McDaniel, whether he knew he was going to die or not, I'm willing to admit it in evidence right now.

"The court: Well, before anything a man says would be admissible, it would have to first be shown that he made the statement while he was conscious and at a time when he was in a dying condition, and that he was conscious of his condition and that he made the statement then. That's the only way you could get it legally before the jury.

"Mr. Guillebeau: I realize it, your honor.

"The court: Very well."

After the charge of the court and the jury had retired and while the jury was considering the case and before a verdict had been reached, the defendant moved the court to declare a mistrial in the case, "on account of the fact that the solicitor-general was permitted by the court, over the objection of defendant's counsel, to argue in the court-room and in the presence of the jury after counsel had finished his concluding argument, in reply to the argument of defendant's counsel based on the fact that no dying declaration of the deceased was introduced in evidence. The defendant's motion for mistrial was based on the ground that this was prejudicial and harmful to the defendant and prejudiced his right, since there was no evidence in the record on the question whether or not Mr. McDaniel was conscious of his condition; and upon the further ground that the questions asked defendant's counsel by the court in this connection tended to prejudice the rights of the defendant, in that they tended to cause the jury to believe that the solicitor-general was right in his contention, and tended to cause the jury to believe there was no weight or merit in the argument of defendant's counsel which he had rightly and properly made. The defendant for these reasons asked the court to declare a mistrial because of all the things that were said by the solicitor-general pertaining to dying declarations in the presence of the jury after the conclusion of the argument, and because of the things that were said by the court in the presence of the jury after the conclusion of his argument."

I am of the opinion that the learned trial judge erred in permitting the solicitor-general to make what was practically the concluding speech in the trial of this murder case. As long as persons charged with crime are represented by counsel who are competent to argue in behalf of their innocence or plead in mitigation extenuating circumstances which may lighten the penalty imposed by law, there can be no means of properly estimating the value of the concluding argument in a criminal case. In my experience and observation of nearly fifty years at the bar I have observed more cases lost or won by the lack of opportunity on the part of opposing counsel to reply to the concluding argument which by law fell to his adversary than I can specifically assign to any other fact or principle involved in a case. There are but few cases in which there are not two sides to the question, and in the concluding speech counsel has the opportunity of taking advantage of every

omission or oversight or inadvertence in the management and argument of opposing counsel. He can attack every weak point by comparison, ridicule, sarcasm, and invective without fear of any further explanation on the part of his adversary, when in some instances even a word of explanation might incline the jury to believe the prior argument was better supported than that in the concluding speech. This court has frequently ruled on the great value of the conclusion in the argument. It is declared in section 1055 of the Penal Code that "if the defendant shall introduce no testimony, his counsel shall open and conclude after the testimony on the part of the State is closed." In *Chapman* v. *Atlanta & West Point R.*, 74 *Ga.* 547, the judgment of the trial court was reversed upon the sole ground that the right to open and conclude to the jury was improperly awarded to the defendant in error, the court holding, "The right to open and conclude to the jury is an important right, and an improper denial of it will work a reversal." In *Phelps* v. *Thurman*, 74 *Ga.* 837, this court held that the presumption is that the party to whom this right has been improperly denied has been injured. Following this, Mr. Justice Hall, speaking for the court, held in *Seyden* v. *State*, 78 *Ga.* 105, that the making of a statement by the defendant where he introduces no other evidence entitles him to conclude the argument in the case, and that this is an important right, and its denial will generally cause a reversal of the decision of the lower court, for the reason that the presumption arising from the denial of the right is that the party thus denied of it has been injured. It is true that in *Seyden's* case the judgment of the lower court refusing a new trial was affirmed, because the court held that the defendant had no defense, and that the verdict of guilty was demanded by the evidence and by the admission of the defendant in his statement.

In the early case of *Cartright* v. *Clopton*, 25 *Ga.* 85, this court granted a new trial to the plaintiff because the court refused to allow counsel for the party entitled to the conclusion to argue the case when the defendant's counsel declined to argue because the plaintiff's counsel had already had an opening argument; holding: "On the trial of a case, when the evidence had closed, the court 'directed counsel for the plaintiff to go on and state his points relied on for a recovery, to the jury. Plaintiff's counsel did so. Defendant's counsel then asked the court to give the law in

charge to the jury; whereupon counsel for the plaintiff insisted that he had a right to argue his case to the jury.' The court refused to allow him to do so. *Held,* that the court erred." In *Buchanan* v. *McDonald,* 40 *Ga.* 286, this court held it was error for the court to refuse the plaintiff the right to open and conclude the argument. It was said by McCay, J.: "Nor was it an immaterial error. It is not worth while to disguise the truth or to conceal from ourselves that the right to open and conclude, in a jury trial, is of prime importance. The right to open is important. It enables the party to give direction to the case, very often to choose the ground on which the battle shall be fought. And the right to conclude is more important still. Even in fair and legitimate argument, the party concluding has the advantage of knowing precisely the line of his opponent, and therefore of directing his attention to it, and arraying everything in the case that fairly illustrates and sustains his view of it. We pass no judgment on the facts. We simply say that the plaintiff was at a disadvantage, in which the court ought not to have put him." In *Willett Seed Co.* v. *Kirkeby &c. Co.,* 145 *Ga.* 559 (89 S. E. 486), this court held, Mr. Justice Atkinson delivering the opinion: "As the defendant did not introduce any evidence, the attorney for the defendant was entitled to the opening and conclusion of the argument before the jury. Civil Code, § 5746; *Moore* v. *Carey,* 116 *Ga.* 28 (5) 34 (42 S. E. 258); *Arthur* v. *Commissioners of Gordon County,* 67 *Ga.* 221 (5). Under the circumstances of the case, it was error requiring a new trial to refuse to allow the defendant's counsel the right to open and conclude." In *Fisher* v. *George S. Jones Co.,* 108 *Ga.* 490 (34 S. E. 172), Mr. Justice Fish, delivering the opinion of the court, said: "The opening and conclusion in a case is a very important right." Even in the trial of civil cases, when the feeling which is frequently engendered against one charged with an outrageous offense is not to be counteracted and overcome as it must frequently be by one accused of such an offense, this court has always held, to use the language of Mr. Justice Beck in *Widincamp* v. *Widincamp,* 135 *Ga.* 644 (70 S. E. 566): "The right to open and conclude the argument in a case is an important and valuable right, and a refusal to accord that right to the party entitled to it can not be treated as immaterial error."

In this criminal case and under the circumstances apparent in

this record, the general presumption that an abridgement or denial of the right of a defendant who has introduced no testimony to the opening and conclusion of the argument has injured the defendant is accentuated by the circumstances disclosed by the record. The reply of the solicitor-general to the argument of the defendant's counsel, made as the solicitor-general stated he wished it to be, to the jury, in effect accorded the conclusion of the argument in this case to the State's counsel, a lawyer of paramount ability whose every word fell with weight upon the ears of the twelve men who were to pass upon the fate of the accused, because they came from lips of counsel who deserves to be respected for his integrity and is justly entitled to the confidence of every juror because of his honesty and courage. On the other hand, counsel for the accused was subjected to an examination as to his understanding of the definition of dying declarations, from which the jury could easily infer that the court had but scant respect for the defense interposed in his client's behalf by the defendant's counsel. While holding the learned and conscientious judge who presided in this case in the highest estimation as one of the purest and ablest occupants of the bench in Georgia, I am compelled by a sense of duty to protest against the proceedings in the present case as disclosed by the facts certified to be true as part of the sixth ground of the amendment to the motion for a new trial. I am endeavoring, if I can do nothing else, to prevent a repetition of a similar occurrence in any future trial, deliberately convinced as I am that the only proper way in which the criminal law should be enforced is by the administration of justice according to the rules of procedure which have been sanctified by the centuries which have succeeded Magna Charta and the bill of rights. I am far from supposing or even suspecting that the learned trial judge intended to do the accused the slightest injury or to depreciate his counsel; and yet it seems to me that the examination of defendant's counsel by the questions which have been quoted above from the record, in the circumstances of the case, could but tend to greatly depreciate counsel and his argument in the minds of the jury. Furthermore, I am of the opinion that the argument of defendant's counsel was legitimate and proper; and if that is not true, counsel for the State had the right to object to the argument at the time it was made, and invoke a ruling of the court which would bring that part of the speech to

an end, without allowing the last argument in the case to be made by State's counsel in the statement of the objection and the argument in support of it.    It is almost an intellectual impossibility for a judge to make an examination of a witness in vital questions of· the case on trial without in some manner and to some extent intimating his own opinion.    As said by Chief Judge Hill, in *Sharpton* v. *State*, 1 *Ga. App.* 542, 548, 549 (57 S. E. 929), "Every practitioner knows how eagerly alert jurors are to every utterance from the bench, and how sensitive is the mind of the juror to the slightest judicial expression."    See also opinion of Luke, J., in *Spivey* v. *State*, 38 *Ga. App.* 213 (143 S. E. 450), and cit.    The exceptions in the sixth ground of the amendment to the motion for a new trial are well taken, and in my opinion demand that the case be retried in order that the defendant may have an opportunity to present his defense, if he has any, unimpeded by a recurrence of such circumstances as those here complained of.

In the fifth ground of the amendment to the motion for a new trial the complaint is made that the court illegally withheld from the jury, against the demand of the defendant, certain material evidence which the defendant sought to elicit from the State's witness  E. L. Griffin on cross-examination, and that the court thus erred in abridging and denying the defendant's right to a thorough and sifting cross-examination of this State's witness.    It was the witness Griffin who was shot by the accused before the accused ran and collided with officer McDaniel.    In the trial of the case counsel for the defendant undertook to bring out, on cross-examination of the witness Griffin, that Griffin and two other men had been looking for the accused to shoot him·down on sight, and that, thinking that a man named Zink was the accused, they had shot him down on sight.    Counsel for defendant further undertook to prove, on cross-examination of Griffin, that the accused knew of this, and from this fact knew that these three men were on the lookout for him to shoot him down,· and that he was liable to be shot down by them at any moment if he traversed the streets of Atlanta.    It appears from the record that while counsel for the defendant was stating to the court what he expected to prove and the purpose for which he desired the testimony, the jury being retired, the court interrupted counsel with the following ruling: "You needn't argue it.    I'll exclude it.    I let you show anything that occurred down there at

the time of this shooting, not what happened on a previous occasion, but anything that occurred at the time of this shooting, I'll permit you to show that. Bring the jury back." Did the defendant have the right to show that he had reason to fear that he would be killed by Griffin, and that he was justifiable in shooting Griffin, in corroboration of his statement that he was not fleeing, after shooting Griffin, from consciousness of guilt, but in order to escape the crowd who were pursuing him? If he was entitled to set up self-defense in the shooting of Griffin and established that fact to the satisfaction of the jury, he was no fugitive from justice. He had committed no crime, and the jury could well have believed his statement that he was not intending to assail the deceased but to invoke his protection. Furthermore, under the broad provisions of the Code which allow a cross-examination thorough and sifting, the accused had the right to bring out the evidence he sought for the purpose of illustrating both the state of the feelings of the witness against him and the nature and character of the witness himself, and let the jury see what credit they would give his testimony, whether little or much.

Under the ruling of the court the State was allowed to prove that the accused shot Griffin prior to his shooting McDaniel, in support of the State's contention that the accused had committed a crime and was endeavoring to escape. These were substantial facts. And yet the defendant was denied the right to bring out any fact or circumstance leading up to the shooting of Griffin, which might tend to show that he had not committed a crime, or to mitigate the offense. The jury trying the accused for his life had submitted to them the fact that he had shot Griffin, but the accused was denied the right to let the jury know by cross-examination why he shot Griffin, and to justify himself, if he could, for this alleged crime from which he was said to be fleeing. "The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him." Section 1044, Penal Code of 1910. "The right of a defendant to test the consistency or improbability of a witness's story, as well as his interest or feeling in the case, by cross-examination thorough and sifting, is secured to every party as to witnesses called against him. Civil Code, § 3864. And a material abridgement or denial of this right is ground for a new trial." Holt v. State, 2 Ga. App. 383 (58 S. E.

511), and cit. In *Mitchell* v. *State*, 71 *Ga.* 128 (6), 157, Mr. Justice Hall, delivering the opinion of the court, said: "It is unquestionably true, that the right of 'a thorough and sifting cross-examination' of the witnesses called against him belongs to every party. Code, § 3864. Wherever the purpose is to impeach or discredit the witness, which we suppose was the case here, although it may not have been avowed, and was very properly held back, as the avowal might have defeated the object in view, 'great latitude should be allowed by the court' in cross-examinations." As said by Judge Lyon in *Floyd* v. *Wallace,* 31 *Ga.* 688, 691, "The object of the questions propounded to the witness . . was to elicit facts that would show the bias or interest of the witness against the defendant, or in favor of the plaintiff, and thus to disqualify or discredit the witness before the jury; for this purpose, great latitude ought to be allowed by the court, especially as, after everything is out, it is for the jury to believe the witness or not, as they may be convinced, and as the answers, if in the affirmative, might have a tendency in that way, we can not say they were improperly allowed. Although it was not competent to use the statements of the witness, Hargrove, as original evidence against the right of plaintiff to recover, still it was competent to put those statements in evidence for the purpose of impeaching the plaintiff's witness, Hargrove."

In the trial the court charged the jury on the subject of murder and the subject of accidental killing, but did not charge upon the law of either voluntary manslaughter or mutual combat, or upon the subject of involuntary manslaughter in the commission of an unlawful act. The defendant requested instructions based upon the law of voluntary manslaughter and involuntary manslaughter, which were refused. It appears from the record that counsel for the accused did not insist that the defendant was entitled to an acquittal, but argued that he should only be convicted of involuntary manslaughter in the commission of an unlawful act; and therefore the question presented is whether the requests for instructions were in such form as to require the court's compliance. The requests for instructions are as follows:

"Defendant . . requests the court to charge the jury as follows, each paragraph to be considered a separate and distinct request to charge:

"1. The defendant requests the court to charge the jury the law of manslaughter.

"2. The defendant requests the court to charge the jury the law of voluntary manslaughter. ·

"3. The defendant requests the court to charge the jury the law of voluntary manslaughter as based upon the law of mutual combat.

"4. The defendant requests the court to charge the jury the law of involuntary manslaughter.

"5. The defendant requests the court to charge the jury the law of involuntary manslaughter in the commission of an unlawful act.

"6. The defendant requests the court to charge the jury that a person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, where it satisfactorily appears there was no evil design or intention, or culpable neglect."

It will be observed that these requests do not indicate any definite principle applicable to the facts of the case at bar, or specify what portions of what is called "the law" defendant desired to be given in charge to the jury. It was not error to refuse the so-called requests in the forms presented.

The court erred in charging, as complained of in the first special ground of the motion for a new trial, as follows: "Gentlemen, if you should believe beyond a reasonable doubt that this defendant, in the County of Fulton and State of Georgia, at any time prior to the date of the finding and return of this bill of indictment, shot a man with a pistol and fled from the scene or the place where he shot the man with the pistol; and if you should believe that, while so fleeing, the deceased, as an officer, a police officer of the City of Atlanta, undertook to stop him from fleeing, to take him into custody, then and in that event the court instructs you that the deceased, if he was a police officer of the City of Atlanta, and that it occurred in the City of Atlanta, this county, would have the right to apprehend him—the legal right to arrest him, and he would have the legal right to use such reasonable force as would be necessary to effect the arrest; and if you should believe that he undertook to arrest him, and he undertook to use such reasonable force only as was necessary to effect an arrest, and that while so doing this defendant did intentionally shoot him with a pistol as charged in this indictment, causing his death—causing the death of the one named in the indictment, then and in that event you would be

authorized to find the defendant guilty of murder as charged. If you do not believe the defendant is guilty of intentionally shooting and killing the person named in this indictment in the manner charged, or if you should entertain a reasonable doubt as to his guilt, it will be your duty to acquit."

I am authorized to state that Mr. Justice Atkinson concurs in the foregoing special concurrence and dissent.