### A99A1906. SCOTT v. THE STATE.
(532 SE2d 141)

MILLER, Judge.

Arthur Scott, also known as Dan Scott, was tried before a jury and found guilty of two counts of aggravated battery and three counts of aggravated assault, for acts directed at his common law wife. At sentencing, two counts of aggravated assault (Counts 4 and 6) were merged with related counts for aggravated battery. He appeals from the denial of his amended motion for new trial, enumerating (1) the admission of hearsay testimony, (2) the admission of evidence of an extrinsic act for which he had been tried and acquitted, and (3) the sufficiency of the evidence. Finding no harmful error, we affirm.

Viewed in the light most favorable to the jury's verdicts, the evidence revealed that, on February 9, 1997, at 2:34 p.m., Scott telephoned 911 and reported that, on the night before, an armed robber had hit Scott's wife, Susan Ann Sims, with a gun. When an officer arrived at Scott's residence, he noticed Sims' face was severely swollen, with dried blood. Scott claimed that he had been robbed of $2,000 around 4:00 a.m. and that during this robbery, Sims had been severely beaten. Although the victim did not initially dispute this account, once out of Scott's presence, she confided to the officer that her injuries had been administered by Scott. In addition to Sims' swollen left eye and the lacerations and indentations on her forehead

---

[12] (Citations and punctuation omitted.) *Lovell v. State*, 235 Ga. App. 140, 143 (2) (508 SE2d 771) (1998).
[13] See id.

and scalp, the officer observed burn marks, scalding and blistering on her thigh, abdomen and breast areas. The victim's oldest child, then six-year-old Mercedes, volunteered to the officer that it was Scott who struck her mother with a gun.

Scott had lived with Sims for seven years and was the father of her children. On the evening in question, she and Scott had been to a wake from 8:00 p.m. until midnight. Each had been drinking, and on the way home, they got into an argument, with Scott cursing Sims and wrongly accusing her of taking money from him. When they got home, the argument turned violent: Scott started beating Sims with his fists and hands, actually striking her about ten or fifteen times. Scott then picked up his pistol and struck Sims on the top of her head seven or eight times. When the beating stopped, Sims walked toward the bathroom, and Scott put the pistol to her head and told her to get in the shower. When she got in, Scott turned on scalding hot water. Steaming hot water splashed on her thigh, her stomach and her breast. Sims required stitches for her head wounds and skin grafts for her third-degree burns. She sustained nerve damage and lost feeling in the top of her head and has permanent scars and memory lapses.

1. The third enumeration urges the general grounds.

(a) On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. An appellate court does not weigh the evidence or judge witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[1] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. So long as there is some competent evidence, even though contradicted, to support each fact necessary for the State's case, the jury's verdict will be upheld.[2]

(b) A person commits the offense of aggravated battery when he "maliciously causes bodily harm to another by depriving . . . her of a member of . . . her body, by rendering a member of . . . her body useless, or by seriously disfiguring . . . her body or a member thereof."[3]

Here, proof that defendant's unjustified and malicious blows to the victim's head caused memory lapses and permanent nerve damage is sufficient to authorize the jury's verdict that he committed aggravated battery by depriving her of a member of her body as

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Ringo v. State*, 236 Ga. App. 38, 39 (510 SE2d 893) (1999).
[3] OCGA § 16-5-24 (a).

alleged in Count 1 of the indictment.[4]

(c) "Black's Law Dictionary defines 'disfigurement' as 'that which impairs or injures . . . the appearance of a person . . . ,' and defines 'serious' as 'grave, (or) great.' "[5] It is not necessary that the disfigurement be permanent.[6] Here, the victim sustained third-degree burns requiring hospitalization and skin grafts, and she has permanent scarring because defendant held her at gunpoint and subjected her to scalding hot water. This is sufficient to authorize the jury's verdict that Scott committed aggravated battery by seriously disfiguring the victim as alleged in Count 2 of the indictment.[7]

(d) A person commits the offense of aggravated assault when he assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[8]

Whether Scott's fists and hands constituted objects likely to result in serious injury was a question of fact for the jury.[9] The evidence that Scott beat the victim about the head and face with his hands is sufficient to authorize the jury's verdict that he is guilty, beyond a reasonable doubt, of aggravated assault as alleged in Count 5 of the indictment.[10]

2. On February 10, 1997, the day after this incident, a detective spoke with the young witness, Mercedes, at the home of her grandmother, and obtained a recorded statement from her. In this statement, she told the detective that her father "was hitting [her] mamma with a gun," saying, "where's my money?" He hit her "on her face [and] he hit her in the eye [with] the gun." Then, he "put her in hot water." Out of the presence of the jury, Mercedes was examined by the court, but she did not remember giving that statement, nor did she remember anything about what happened the previous year when her mother had to go to the hospital. Over Scott's hearsay objection, the trial court allowed the audiotaped recording of Mercedes' interview to be played to the jury. After the State rested, Mercedes was called as the court's witness. The State had no questions for her. Under cross-examination by Scott, Mercedes testified she did not remember anything about the incident and further answered "No" when asked if she ever saw an argument between her mother and father. Scott enumerates the admission of the audiotape as error.

---

[4] See *Griffin v. State*, 170 Ga. App. 287 (10) (316 SE2d 797) (1984) (brain injury resulting from forceful blows to the head is sufficient).

[5] *Baker v. State*, 246 Ga. 317, 318 (2) (271 SE2d 360) (1980).

[6] *In the Interest of H. S.*, 199 Ga. App. 481 (405 SE2d 323) (1991).

[7] *Price v. State*, 160 Ga. App. 245-246 (1) (286 SE2d 744) (1981).

[8] OCGA § 16-5-21 (a) (2).

[9] *Arnett v. State*, 245 Ga. 470, 473 (3) (265 SE2d 771) (1980).

[10] *Maloy v. State*, 237 Ga. App. 873, 874 (2) (516 SE2d 370) (1999).

We agree with defendant that this recording of a contemporaneous statement by a witness (not herself the victim) is not admissible hearsay under the amendment to the Child Hearsay Statute,[11] under the controlling authority of *Woodard v. State*.[12] While the tape would be admissible as a prior inconsistent statement,[13] the State failed to lay a proper foundation, namely having the witness testify before the jury that she did not see any argument between her parents.[14] Nevertheless, the erroneous admission of the child's hearsay evidence was rendered harmless in this instance by proof of the same facts by properly admissible evidence.[15] The audiotape was entirely cumulative of the child's admissible res gestae statement that it was Scott who struck her mother with the gun, as well as the victim's direct testimony.

3. The State notified Scott of its intent to introduce evidence of three prior acts of violence he committed against this victim. At the hearing on the admissibility of these allegedly similar transactions, Scott objected to proof of an October 1993 battery because he had been tried before a jury and acquitted. The State's attorney conceded the acquittal and offered to pull the case file but argued that the incident was admissible despite Scott's acquittal. Without examining the file, the trial court concluded the incident was admissible as a prior difficulty, to show course of conduct and bent of mind. At trial, the victim was permitted to testify over objection that, in the October 1993 incident, the two of them got into an argument and Scott "started beating [her] with his fists . . . and he beated [sic] the contact lens down in [her] eye." The victim "couldn't do anything [to defend herself]. He had done beat the hell out of [her] that time, too."

While the admissibility of the State's evidence of "prior difficulties" between the accused and the victim no longer must be determined at a pre-trial hearing under Uniform Superior Court Rules 31.1 and 31.3,[16] the circumstance here of Scott's prior acquittal of a criminal charge arising out of the proffered prior difficulty does demand close pre-trial scrutiny by the trial court.

Although some jurisdictions have adopted a per se rule

---

[11] OCGA § 24-3-16.

[12] 269 Ga. 317, 321 (3) (496 SE2d 896) (1998).

[13] *Griffin v. State*, 251 Ga. 431, 432 (4) (306 SE2d 283) (1983).

[14] Compare *Barksdale v. State*, 265 Ga. 9, 11 (2) (a) (453 SE2d 2) (1995) (co-indictee's in-court refusal to testify is "no testimony in court with which the prior statement could be judged to be inconsistent," under *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982)).

[15] *Assad v. State*, 195 Ga. App. 692, 693 (2) (394 SE2d 617) (1990). Accord *Smith v. State*, 266 Ga. 827, 831 (4) (470 SE2d 674) (1996).

[16] *Haska v. State*, 240 Ga. App. 527, 530 (4) (523 SE2d 589) (1999). Accord *Owens v. State*, 270 Ga. 199, 201 (2) (509 SE2d 905) (1998) (defendants no longer need comply with USCR 31.1 and 31.6 in order to admit evidence of prior difficulties with the victim).

prohibiting any evidentiary use of independent offenses where an acquittal was obtained, [the Supreme Court of Georgia] has not. Instead, the application of collateral estoppel requires an examination of what facts were in issue and necessarily resolved in the defendant's favor at the first trial.[17]

The trial court committed procedural error by deciding the admissibility of this prior incident without determining whether the purpose for which the prior incident was offered here (to prove course of conduct and bent of mind) involved an issue resolved in Scott's favor by the verdict of acquittal.[18] In the absence of evidence to the contrary, we will assume that a general verdict of "not guilty" was returned.[19]

In order to introduce evidence of an independent offense as a relevant similar transaction [or prior difficulty] the state must prove two factors. It must be shown that the defendant was in fact the perpetrator of the separate offense and that there is a sufficient similarity of offenses so that proof of the former tends to prove the latter. It is in establishing the first factor that collateral estoppel comes into play where there has been [an] acquittal. . . .[20]

Here, Scott testified that the prior incident involved self-defense when Sims tried to stab him and that he "won the case at a jury trial."[21] The evidence of record thus demands a finding that Scott's "course of conduct" was a disputed issue that the jury resolved in his favor. Consequently, the specifics of this prior difficulty[22] were irrelevant and inadmissible, and the trial court substantively erred in admitting this evidence. But in light of the admissible prior difficulties, the direct evidence of the victim, and the contemporaneous (res gestae) account of Scott's daughter, we conclude the error was harmless beyond a reasonable doubt, in that it is highly probable the erroneous admission of this irrelevant prior difficulty did not contribute

---

[17] (Citations and punctuation omitted.) *Salcedo v. State*, 258 Ga. 870 (376 SE2d 360) (1989).

[18] Id. at 871.

[19] See OCGA § 17-9-2.

[20] (Citation omitted.) *Moore v. State*, 254 Ga. 674, 676 (333 SE2d 605) (1985).

[21] The best evidence of an acquittal is a certified copy of the verdict or judgment of acquittal. See *In the Interest of B. K.*, 239 Ga. App. 822, 823 (522 SE2d 255) (1999).

[22] We do not intend to exclude a victim's factual statement that she and a companion quarreled or fought frequently, as that does not necessarily implicate the character of the accused.

to the verdicts.[23]

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 22, 2000 —
RECONSIDERATION DENIED APRIL 7, 2000 —

*James M. Feagle, Kris K. Skaar,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Keith E. Adams, Assistant District Attorneys,* for appellee.

