A00A0882. DAVIS v. THE STATE.
(536 SE2d 596)

MILLER, Judge.

Convicted of armed robbery, attempted armed robbery, aggravated battery, aggravated assault, and two counts of possession of a firearm while committing a felony, Gary Quizon Davis appeals. Aside from sufficiency of the evidence, the questions on appeal are (1) whether Davis's statement as to the location of his gun was admissible when given in response to an inquiry from an officer who was informed that Davis had a gun in the residence and who upon arresting Davis at the residence asked where the gun was, and (2) whether Davis's prior offense of threatening an individual with a gun to resolve a dispute over a parking space was admissible to help prove that Davis threatened and shot an individual who refused to comply with his robbery demand. Since the evidence is sufficient and

because we answer both questions in the affirmative, we affirm.

1. When reviewing a criminal conviction, we view the evidence in the light most favorable to a finding of guilt and do not weigh the evidence nor judge witness credibility.[1] The question is whether under the evidence presented a rational trier of fact could have found guilt beyond a reasonable doubt.[2]

So viewed, the evidence here was that shortly after midnight two men brandishing handguns jumped from a distinctive red and white Cadillac, fired shots at the ground, and demanded that two nearby pedestrians give up their money and jewelry. The first pedestrian complied by throwing his money on the ground while the second refused, saying he had no money. The pedestrians ran away, and the two robbers opened fire, striking the first pedestrian in the leg and the second in the finger, resulting in the loss of a part of that finger.

Within hours police found the Cadillac parked and locked nearby, and they called for a tow truck. Upon inspection, they discovered therein documents with Davis's name on them (a pawn loan agreement, a pay stub, and a time sheet) as well as a live .25 caliber cartridge. When a relative of the car's owner later complained to authorities that Davis was staying in the car owner's apartment and had a gun, police went to the apartment to arrest Davis on a probation warrant. After handcuffing Davis and a roommate and while the other officers were sweeping the apartment, the arresting officer twice asked Davis where the gun was, to which Davis finally responded that it was in the dresser. After retrieving the .25 caliber gun and related ammunition from the dresser and also discovering a holster for a larger gun, the officer asked Davis where the larger gun was, to which Davis responded he had sold it. No other questions were posed.

At trial the second pedestrian positively identified Davis as one of the gunmen. A ballistics expert identified the live .25 cartridge found in the Cadillac as being of the same brand and caliber as the cartridges in the gun found in the dresser. The car's owner testified that she had loaned Davis the distinctive Cadillac on the evening of the robbery and that he later confessed to her that he had shot one man in the leg and another in the finger "[b]ecause he was stingy with his money." Davis testified and admitted to borrowing the car, to making the statements to the car's owner (although supposedly in jest), to owning the .25 caliber gun found in the dresser of the apartment, and to the possibility that the live cartridge found in the car was his.

---

[1] *Scott v. State*, 243 Ga. App. 383, 384 (1) (a) (532 SE2d 141) (2000).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Claiming alibi, Davis emphasizes that the State's witnesses gave conflicting and self-contradictory testimony on his identification. Such conflicts and contradictions are matters of credibility for the jury to resolve; so long as some competent evidence supports the facts necessary for the State's case, the jury's verdict stands.[3] The evidence is sufficient under the standard of *Jackson v. Virginia*[4] to sustain the convictions.[5]

2. Davis contends that the court erred in not suppressing his statements made and the gun found at the time of his arrest. He argues that because he was in custody, the officer could not question him without first informing him of his *Miranda*[6] rights.

In *New York v. Quarles*,[7] the United States Supreme Court held that "there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence," regardless of the officer's actual motivation for making inquiries. In *Quarles*, the officers chased down a rape suspect who reportedly was carrying a gun.[8] After finding a shoulder holster on the suspect, the police handcuffed him and asked where the gun was. Nodding in the direction of some empty cartons, the suspect responded, "'the gun is over there,'" where the police indeed found the gun.[9] The Supreme Court reversed the exclusion of the gun and his statement,[10] reasoning that for the sake of public safety and their own safety, police in apprehending a suspect who they have reason to believe placed a gun in the building or nearby may ask as to the whereabouts of that gun without first giving a *Miranda* warning.[11] "[T]he need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination."[12]

The Supreme Court of Georgia has held similarly.[13] To the extent that cases pre-dating *Quarles* limited the exception to only those instances where the *sole* reason for the inquiry was public or officer

---

[3] *Scott*, supra at 384 (1) (a).

[4] Supra.

[5] See *Scott*, supra at 385 (1) (c) (aggravated battery by serious disfigurement); *Gould v. State*, 239 Ga. App. 312, 313 (1) (521 SE2d 365) (1999) (armed robbery); *Butura v. State*, 239 Ga. App. 132, 133 (2) (519 SE2d 18) (1999) (criminal attempt to commit armed robbery); *Anderson v. State*, 237 Ga. App. 595, 596 (2) (516 SE2d 315) (1999) (possession of firearm during commission of felony against a person); *Lewis v. State*, 215 Ga. App. 161, 163 (3) (450 SE2d 448) (1994) (aggravated assault by shooting).

[6] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[7] 467 U. S. 649, 655 (104 SC 2626, 81 LE2d 550) (1984).

[8] Id. at 652.

[9] Id.

[10] Id. at 659-660.

[11] Id. at 657.

[12] Id.

[13] *Smith v. State*, 264 Ga. 857, 859 (3) (452 SE2d 494) (1995).

safety,[14] they must be deemed to have been overruled in part by *Quarles*, which held that the availability of the exception does not depend upon the motivation of the individuals involved.[15] The key is whether under the objective facts the officer had a reasonable basis for making the inquiry to protect public and officer safety.

Here the arresting officer had information that (1) Davis was on probation for having carried a concealed weapon, (2) the landlord had reported that Davis had a gun in the apartment and that the tenant, who had a small child in the apartment, was frightened, (3) Davis had been bragging to the tenant about having a gun and about having shot someone, and (4) Davis was a possible suspect in the recent shooting of the pedestrians. The other officers were still sweeping the apartment and had not yet established who else or what else was present that could pose a threat to the officers or the infant. The officer further testified that he asked about the gun in part because of a concern for public safety, which the court found credible. As there was evidence to support the trial court's findings and ruling, we will not disturb them.[16]

3. Davis complains that the court allowed the State to introduce evidence of a similar transaction. Conceding he was convicted of the prior offense, he instead emphasizes that the prior incident was dissimilar and proved nothing regarding his guilt on the charges being tried.

The State must make three affirmative showings to introduce a similar transaction.

> First, the State must demonstrate that it seeks to introduce such evidence for an appropriate purpose, such as illustrating appellant's identity, intent, course of conduct, and bent of mind; second, the State must show sufficient evidence to establish that the accused committed the independent offense or act; third, the State must demonstrate a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640 (409 SE2d 649) [(1991)].[17]

The first and third prongs are at issue here. Claiming the prior transaction showed Davis's propensity to resort to firearms when angered, the State announced its purpose was to show identity,

---

[14] See, e.g., *State v. Overby*, 249 Ga. 341 (290 SE2d 464) (1982), and cases cited therein.

[15] See 467 U. S. at 655-656.

[16] See *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[17] *Harris v. State*, 222 Ga. App. 83, 84 (1) (473 SE2d 245) (1996).

scheme, motive, bent of mind, and course of conduct.

The law on similar transactions has come a long way from the seminal decision in *Bacon v. State*,[18] which prohibited introducing a prior crime *"even though it be a crime of the same sort . . ."*[19] as circumstantial evidence of felonious intent. Now, however, it is permissible for the State to introduce a similar crime precisely to show that the accused "has a propensity for initiating and continuing unprovoked [violent] encounters. . . ."[20] This falls into the category of showing malice, intent, motive, course of conduct, and bent of mind.[21] Thus, a prior unprovoked use of a gun as a threat may show the accused's temper and "his propensity to settle disagreements with a gun, and particularly to act violently and impulsively to disappointment, jealousy or misunderstanding and to resort to the threat or use of firearms with little or no provocation."[22]

Here the prior offense was the unprovoked use of a firearm to threaten a driver who disagreed with Davis's taking of a parking space. This showed Davis's propensity to settle disagreements with a gun, to act violently and impulsively to disappointment or misunderstanding, and to resort to the use of a gun with little provocation. Regarding the present charges, this helped prove bent of mind and course of conduct, for the incident at hand involved Davis's threat and use of a firearm to intimidate and punish a person reluctant to comply with his robbery demand. The court did not abuse its discretion in admitting the prior transaction.[23]

*Judgment affirmed. Pope, P. J., and Smith, P. J., concur.*

DECIDED JUNE 29, 2000 

*L. Elizabeth Lane*, for appellant.

---

[18] 209 Ga. 261 (71 SE2d 615) (1952).

[19] (Emphasis in original.) Id. at 262; see OCGA § 24-2-2.

[20] *Farley v. State*, 265 Ga. 622, 624 (2) (458 SE2d 643) (1995).

[21] Id.; see *Hall v. State*, 198 Ga. App. 434 (1) (401 SE2d 623) (1991).

[22] (Citations omitted.) *Willis v. State*, 214 Ga. App. 479, 480 (3) (a) (448 SE2d 223) (1994); accord *Jordan v. State*, 192 Ga. App. 69, 70 (2) (383 SE2d 631) (1989) (prior threat with gun showed "propensity of defendant to resort to the threat or use of firearms with little or no provocation, and that this conduct by defendant is not inhibited by the presence of witnesses"); see generally *Menefee v. State*, 270 Ga. 540, 543 (3) (512 SE2d 275) (1999) (prior use of gun showed "bent of mind to commit the present offense" of felony murder and aggravated assault in connection with shooting).

[23] See *Collins v. State*, 242 Ga. App. 450, 453 (2) (529 SE2d 412) (2000) (abuse of discretion standard applies).

*Kelly R. Burke, District Attorney, A. James Rockefeller, Assistant District Attorney*, for appellee.