## S10A2042. EVANS v. THE STATE.

(707 SE2d 353)

MELTON, Justice.

Omar Evans was tried and found guilty by a jury of malice murder, felony murder, aggravated assault, and possession of a firearm by a convicted felon relating to the shooting death of Dharren Henderson.[1] Among other things, Evans contends on appeal that the trial court made a number of improper evidentiary rulings and that he received ineffective assistance of trial counsel. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on March 11, 2005, Dharren Henderson (the victim) and his brother, Darnell Henderson (Henderson), went to a shopping plaza off Six Flags Drive in Cobb County to eat lunch. As they were walking into a restaurant, Evans, whose nickname was "Tic," gave them a dirty look. Evans and the victim exchanged words. Henderson and the victim went into the restaurant to order food, the victim briefly stepped outside, and when the victim returned, he told his brother that Evans had "tried him." Henderson and the victim then went back to their car. After a moment, the victim got out of the car to smoke a cigarette. Henderson next heard the victim and Evans arguing loudly outside the car. When Henderson got out of the car to try to calm things down, he saw Evans "raise his hand up" and heard gunshots.[2] Henderson saw the victim fall to the ground. Fearing that Evans would also shoot him, Henderson jumped in his car and drove away. After realizing that Evans was not following him, Henderson returned to the parking lot. The victim had been shot five times and died from gunshot wounds to the head and torso. Henderson initially refused to cooperate with police, claiming that he intended to seek personal revenge against Evans. Henderson eventually capitulated, and he later informed the police that Evans was the shooter and identified Evans in a photo lineup.

Several witnesses testified to seeing Evans in the plaza the day

---

[1] On December 9, 2005, Evans was indicted for malice murder, two counts of felony murder (with the underlying offenses being aggravated assault and possession of a firearm by a convicted felon), aggravated assault, and possession of a firearm by a convicted felon. Evans was found guilty on October 9, 2006 on all counts, and he was sentenced to life imprisonment for malice murder. The trial court merged the aggravated assault and possession of a firearm by a convicted felon counts into the malice murder count, and the felony murder counts were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Evans filed a motion for new trial on November 3, 2006 and an amended motion on December 21, 2006. On March 25, 2008, the motion was denied. A notice of appeal was filed on April 7, 2008. Evans' timely appeal was docketed in this Court to the September 2010 term and submitted for decision on the briefs.

[2] Henderson testified that he never actually saw Evans holding a gun, but he believed that he was.

of the shooting. Maurice Stephens, who was getting a haircut at the time of the shooting, saw Evans standing outside the barber shop shortly before the shooting. After the shooting, Stephens ran outside and heard Henderson's brother yelling "Tic shot [my] brother."

Further evidence revealed that the victim and Evans knew each other before the fatal shooting. The night before the victim's murder, Alterick McCall, the victim's cousin, was hanging out at Henderson's girlfriend's apartment[3] when the victim came running in out of breath. The victim told McCall that some guys, including Evans, had tried to "jump" him in the park. The same evening, Corey Stroud, another witness, saw Evans and the victim engaged in an argument at a local football field.

This evidence was sufficient to enable a rational trier of fact to find Evans guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Evans contends that the trial court erred in allowing the State to introduce evidence about the altercation between Evans and the victim that happened on the night before the shooting. Specifically, Evans asserts that the trial court should have excluded McCall's testimony regarding the victim's statement that Evans had "jumped him," arguing that this statement constituted inadmissible hearsay. The trial court held that the statements were admissible under the necessity exception to hearsay. See OCGA § 24-3-1 (b).

"For hearsay to be admitted under the necessity exception, it must be established that the testimony is necessary and that it has particular guarantees of trustworthiness." (Citation omitted.) *Williams v. State*, 279 Ga. 731, 733 (5) (620 SE2d 816) (2005). This Court has defined three basic requirements for admission of hearsay under the necessity exception: (1) the declarant is unavailable, (2) the declarant's statement is relevant to a material fact and more probative on that material fact than other evidence that may be procured and offered, and (3) the statement exhibits particularized guarantees of trustworthiness. See *Watson v. State*, 278 Ga. 763 (2) (604 SE2d 804) (2004). The victim's statement to McCall satisfies all three prerequisites. First, the victim had been murdered and was not available. Second, the statements had the appropriate indicia of trustworthiness because they were made when the victim was confiding in his cousin, whom he had known all his life and had lived with for some time. *Ward v. State*, 271 Ga. 648, 650 (2) (520 SE2d 205) (1999) (where it is shown, under the totality of the circumstances that the statements were made to "one in whom the deceased declarant placed great confidence and to whom [he or] she

---

[3] Henderson was dating Evans' ex-girlfriend, who had a child with Evans.

turned for help with [his or] her problems," statements are admissible under the necessity exception). Third, the victim's statement was highly probative of the combative nature of his relationship with Evans. The trial court did not abuse its discretion in admitting McCall's testimony.

3. Evans argues that the trial court erroneously allowed the State to introduce evidence of Evans' involvement in a prior shooting as a similar transaction. We review the trial court's decision for an abuse of discretion. See *Moore v. State*, 288 Ga. 187 (3) (702 SE2d 176) (2010); *Gunn v. State*, 300 Ga. App. 229 (3) (684 SE2d 380) (2009).

Evidence of an independent offense is admissible where the State shows: (1) that it seeks to introduce the evidence for an appropriate purpose, (2) there is sufficient evidence to establish that the defendant committed the independent offense, and (3) there is sufficient connection or similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991).

In addition to a certified copy of Evans' guilty plea to three counts of aggravated assault, other evidence showed that the prior shooting occurred in 1996 less than five miles away from the scene of the murder now in question. Further evidence shows that Maurice Stephens was confronted by a man who thought Stephens had stolen a radio, and they had an argument. On the night of the shooting, Stephens was driving down the street when several men shot at his vehicle. Multiple bullets struck the car, but Stephens was not seriously injured. The police later apprehended Evans and another man, and Stephens identified them both as the shooters.

Evans contends that the prior aggravated assault was not sufficiently similar to the victim's murder to constitute an admissible similar transaction. The crimes need not be exactly alike for them to be sufficiently similar. We cannot say that the trial court's admission of this evidence, based on the similarities that Evans used a handgun, committed the offenses with little or no provocation, fled the scene, and attempted to cause serious injury or death in the same immediate location, was an abuse of discretion. *Gardner v. State*, 273 Ga. 809 (2) (546 SE2d 490) (2001) (similarities included use of handgun, commission of offense with little or no provocation, late at night, and with others, fleeing the scene, and attempting to cause serious injury or death); *Davis v. State*, 244 Ga. App. 708 (3) (536 SE2d 596) (2000) (independent crime properly admitted where both incidents showed propensity to settle disagreements with a gun, to act violently and impulsively to disappointment, jealousy or misunderstanding, and to resort to use of firearms with little provocation).

4. Evans contends that the trial court committed reversible error

by permitting the prosecution to solicit statistics and information about the neighborhood where the crime occurred. This testimony included evidence regarding the crime rate of the neighborhood, five murders and multiple stabbings in the area between January and March of 2005, and the percentage of people in the neighborhood who had guns. Evans contends that this evidence was irrelevant and highly prejudicial. The trial court admitted this evidence, over objection, based on the State's contention that the evidence was necessary to explain why the police had such a difficult time gaining any information from the 60 to 100 people at the crime scene, including the victim's brother.

Contrary to Evans' contentions, this evidence was not used to suggest that Evans had been involved in any other previous crimes committed in the neighborhood. See *Griffin v. State*, 266 Ga. App. 50, 52 (2) (596 SE2d 405) (2004) (no error where trial court allowed State's witness to testify that area where the crime occurred was "high crime area," because "the statements did not suggest that the [defendant] had himself been involved in any previous criminal misconduct at that or any other location") (citation and punctuation omitted). Moreover, the statements were neither made to show that the police had been lax nor to convey to the jurors that it was up to them to enforce the law as a result of the ineffectiveness of police. See *Fair v. State*, 168 Ga. 409 (148 SE 144) (1929) (quoting murder statistics was error where the prosecutor used those facts to argue that lax law enforcement was largely responsible for crime conditions in Georgia and to urge the jury that sentencing the defendant to a life sentence instead of death would almost be a farce, in that after three years the defendant would be eligible for parole). As a result, the trial court did not abuse its discretion in finding the questioned evidence to be relevant and admissible under the facts of this case.

5. Evans claims that the trial court erred in allowing testimony concerning a lengthy manhunt for Evans. Agent Tony Simpson, who was assigned to the U. S. Marshal Service Fugitive Squad in Atlanta, and Detective Pam Coalson both testified regarding Evans' flight after the murder. Evans argues that this testimony was prejudicial and irrelevant because there was no evidence showing that he knew an arrest warrant had been issued for him or that police were looking for him.

Evidence as to whether a defendant tried to evade capture is admissible as evidence of flight. *Renner v. State*, 260 Ga. 515, 517 (3) (b) (397 SE2d 683) (1990) ("[T]he state may offer evidence of and argue flight."). Furthermore, evidence of flight is relevant because a defendant's "efforts to elude capture arguably provide[ ] circumstan-

tial evidence of guilt." (Citations omitted.) *Anderson v. State*, 225 Ga. App. 727, 728 (484 SE2d 783) (1997). Although Agent Simpson testified that Evans never said whether he knew a warrant was issued for his arrest, he also testified that Detective Coalson met with Evans' mother the day after the shooting and informed her that police had an arrest warrant for Evans in connection with a homicide. Detective Coalson saw a white bag of clothes, and Evans' mother allowed the detective to inspect them. When Evans was arrested, the same bag of clothes was found in a vehicle parked outside the location. Thus, the jury could draw the inference that Evans' mother had met with him and advised him that police were searching for him. Moreover, Detective Coalson also talked with Evans' girlfriend the day after the shooting and told her there was a warrant for his arrest. Both Detective Coalson's and Agent Simpson's testimony were relevant for flight, and the trial court did not commit error in allowing either to be introduced.

6. Evans claims that the trial court erred when it failed to give a complete jury charge on circumstantial evidence. The trial court gave the following charge:

> Ladies and Gentleman of the jury, evidence may be either direct or circumstantial or both. And direct evidence is evidence that points immediately to the question at issue. Evidence may also be used to prove a fact by inference and this is referred to as circumstantial evidence. Circumstantial evidence is the proof of facts or circumstances by direct evidence, from which you may infer other related or connected facts that are reasonable and justified in light of your experience.

Evans contends that the trial court erred because it failed to include the following section from the Suggested Pattern Jury Instructions charge on circumstantial evidence:

> To warrant a conviction on circumstantial evidence, the proven facts must not only be consistent with the theory of guilt, but also exclude every other reasonable theory other than the guilt of the accused.

Evans argues that, since the omitted part of the charge reflects the statutory language of OCGA § 24-4-6 regarding circumstantial evidence, that the trial court's omission constituted reversible error. However, the evidence against Evans was both direct and circumstantial. Henderson witnessed firsthand and provided direct testi-

mony that he saw Evans raise his arm and point it at the victim, followed by gunfire and the victim's collapse to the ground with bullet wounds in his head. Henderson then screamed, "Tic shot [my] brother." Thus, the statutory language of OCGA § 24-4-6 was not required. See *Thompson v. State*, 283 Ga. 581, 582 (3) (662 SE2d 124) (2008) (no error where trial court did not give a requested jury instruction in the language of OCGA § 24-4-6 where the conviction was not based entirely on circumstantial evidence).

In any event, despite the fact that there may have been only circumstantial evidence of a gun in Evans' hand, failure to give the full charge on circumstantial evidence, if error at all, was harmless. In this case, the trial court instructed the jury on the definition of circumstantial evidence and gave a full instruction on reasonable doubt. "Omitting a charge [regarding the exclusion of all reasonable hypotheses] is not harmful or erroneous as a matter of law when some direct evidence is presented and the jury receives a proper instruction on reasonable doubt, as was done here." *Turner v. State*, 245 Ga. App. 294, 298 (4) (g) (536 SE2d 814) (2000), disapproved for other reasons by *Miller v. State*, 285 Ga. 285 (676 SE2d 173) (2009).

7. Finally, Evans claims he received ineffective assistance of trial counsel because his trial attorney did not object, request a limiting instruction, or move for a mistrial, in response to McCall's testimony. Trial counsel represented Evans until his notice of appeal was filed, and thus, this issue is raised for the first time on appeal. "Generally, when the appeal presents the earliest practicable opportunity to raise an ineffectiveness claim, and the claim is indeed raised for the first time on appeal, [the court] remand[s] the case to the trial court for an evidentiary hearing on the issue." *Setser v. State*, 233 Ga. App. 822, 824 (2) (505 SE2d 798) (1998); see also *Mangrum v. State*, 285 Ga. 676, 683 (681 SE2d 130) (2009). However, remand is not necessary "when it appears as a matter of law that the appellant cannot satisfy the two-prong test to establish ineffectiveness of counsel." (Citation and punctuation omitted.) *Setser*, supra, 223 Ga. App. at 824-825.

In order to succeed on a claim of ineffective assistance, Evans must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004).

As explained above, McCall's testimony was admissible under

the necessity exception to hearsay as a prior difficulty, showing Evans' motive, intent, and bent of mind. Trial counsel was not deficient for failing to raise a meritless objection.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 7, 2011 —
RECONSIDERATION DENIED FEBRUARY 28, 2011.

*Gary W. Jones*, for appellant.

*Patrick H. Head, District Attorney, John R. Edwards, Ann B. Harris, Amelia G. Pray, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.