**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 6, 2025**

# In the Court of Appeals of Georgia

A24A1546. HUGHES v. THE STATE.

HODGES, Judge.

In November 2014, a jury found Deldric Antonio Hughes guilty of criminal attempt to commit armed robbery,[1] two counts of aggravated assault, two counts of possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Immediately following the verdict, the trial court sentenced Hughes as a recidivist, pursuant to OCGA § 17-10-7 (a), (c) (2013), to serve 65 years in confinement. Hughes filed a motion for new trial in December 2014, and an

---

[1] The jury found Hughes not guilty of an additional count of attempted armed robbery.

amended motion for new trial in March 2022.[2] Following a hearing in March 2023, the trial court denied that motion. Hughes appeals, arguing that (1) he received ineffective assistance of trial counsel because his attorney failed to call a particular witness at trial, and (2) the trial court incorrectly applied the recidivist statute by failing to exercise its discretion when sentencing him. For the reasons that follow, we affirm.

---

[2] It is unclear from the record why the motion for new trial was not heard earlier, and why more than seven years elapsed between the filing of the initial motion for new trial and the filing of the amended motion for new trial. In accord with the strongly worded views of our Supreme Court, we likewise

> do not condone this inordinate delay in the motion for new trial proceeding[.] . . . These delays put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial. We therefore reiterate that it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay. . . . [E]ven if long-delayed appeals rarely result in outright reversals of convictions or only retrials or resentencings, these extended and unjustified delays in resolving criminal cases make our State's criminal justice system appear unfair and grossly inefficient.

(Citation omitted.) *Owens v. State*, 303 Ga. 254, 258-259 (4) (811 SE2d 420) (2018).

Viewing the evidence in the light most favorable to the verdict,[3] the record shows that on Christmas Eve in 2013, cousins Romandre Jackson and Malik Lee drove to a party in Burke County that was attended by about 50 people, including Hughes. Jackson had "heard of" Hughes, who went by the name "Montana," but had not met him prior to that night. Lee, however, had known Hughes for about seven years because Hughes is the brother of Lee's mother's boyfriend. Lee also knew Hughes by the moniker "Montana."

At some point around midnight, Jackson became aware of people outside who were "fixin['] to fight or something," and decided to leave. He and Lee left and went to Jackson's vehicle. As Jackson was getting into the vehicle on the driver's side and Lee was standing on the passenger's side, someone grabbed Jackson from behind "around the neck," held a gun to his head, and said something like, "you think you ballin['.]" Lee defined "ballin[']" as "[l]ike you got money . . . [l]ike neck gold . . . rings, money in your pocket." The assailant choked Jackson and searched his pocket. After finding nothing and taking nothing, the assailant hit Jackson in the face with a pistol, injuring him and causing him to black out and fall onto the seat of the vehicle.

---

[3] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (99 SCt 2781, 61 LE2d 560) (1979).

Lee testified that the assailant ran away, but turned and shot back at the vehicle, breaking the windows. When Jackson regained consciousness, police had arrived at the scene.

During trial, an officer testified that he was at the scene of the crime on December 25, 2013, wearing a body camera which was recording, and that he spoke with Jackson and Lee. In the recording, which was shown to the jury, one of the men identified "Montana" as the assailant. Another officer spoke with Jackson and Lee that night, and testified that "Tony Montana" was identified as the "nickname" of the attacker.

Five days later, on December 30, 2013, Jackson and Lee gave sworn statements to a police investigator. Jackson identified "Montana Hughes" as the attacker, and Lee identified "Montana" as the attacker. Lee described the weapon as a .40 caliber pistol with an extended clip.

Several months later, in March 2014, Lee and Jackson once again gave sworn statements. At that time, however, Lee averred that he did not see the attacker; he saw only a man in a dark hoodie. He stated that he told police Hughes was the attacker because, "early the following morning," other people had told him Montana was the

4

assailant. In his later statement, Jackson also stated that he did not see his attacker, and he identified Hughes to police only because "the following morning" other people told him Montana had attacked him.

At trial, without objection, Jackson testified that he had "heard" of threats against him if he did not cooperate regarding the case, but that no one had personally threatened him. He testified that he did not know if Hughes was the assailant, but acknowledged that the assailant's clothing was similar to what Hughes was wearing at the party. Lee testified that he had earlier told police Montana was the attacker based on information from other partygoers.

An officer ran the nickname "Tony Montana" or "Montana" through a database of aliases and street names that investigators had compiled, and Hughes' name was the only one associated with such a nickname.

On appeal, Hughes does not challenge the sufficiency of the evidence against him, and it is clear that the jury chose to believe the evidence indicating Hughes was

the perpetrator.[4] Rather, Hughes' appeal challenges the efficacy of his trial counsel's performance and the trial court's imposition of his sentence.

1. Hughes argues that he received ineffective assistance of trial counsel because his lawyer failed to call as a witness Caitlin Dukes, who was Hughes' girlfriend at the time of the incident. She is also the mother of his child. He contends that Dukes would have testified that she heard both Jackson and Lee tell police that Hughes was not the assailant.

> To prevail on an ineffective assistance claim, Hughes
>
> was required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different. . . . The likelihood of a different result must be substantial, not just conceivable. . . . [W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). Further, Hughes

---

[4] See *Davis v. State*, 244 Ga. App. 708, 710 (1) (536 SE2d 596) (2000) (noting that conflicting or contradictory testimony presents a credibility issue for jury resolution).

must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

(Citation and punctuation omitted.) *Velasco v. State*, 306 Ga. 888, 892 (3) (834 SE2d 21) (2019).

At the hearing on Hughes' motion for new trial, Dukes testified that she was present throughout the trial, but was not called to testify. Hughes' post-trial counsel asked Dukes to recall statements she made at Hughes' sentencing hearing,[5] where she spoke to show family support, regarding whether other, unidentified partygoers had told Jackson and Lee that Hughes was the assailant. Post-trial counsel explained this line of questioning to the trial court as an attempt to establish that Jackson and Lee had no first-hand knowledge of who the assailant was and merely "parroted" what others had told them. The State raised a hearsay objection to Dukes testifying about what other people had told Jackson and Lee, and the trial court sustained the objection. As a result, Dukes' only unobjected-to testimony at the motion for new trial

[5] Nothing in the record indicates Dukes was under oath when she spoke at the sentencing hearing.

7

hearing on this particular point was that she saw Lee and Jackson speaking to law enforcement, and then saw them speaking with other partygoers. She also testified that she was with Hughes at the party, and that the pair left when instructed to do so by law enforcement.

Dukes then gave contradictory testimony regarding when she and Hughes arrived at the party. She testified that Hughes was at the party only to "chaperone" a "child's party" because a family member wanted him "to make sure nothing happened," and that they had been at the party for "two, maybe three hours" *before* the crimes occurred. She also testified, contrarily, that she and Hughes were at home on the night of the party and arrived only after someone called, asking Hughes to "intervene[,]" and that they "came *after* things were escalated" and in "chaos." (Emphasis supplied.)

Hughes' trial attorney testified that he no longer remembered "specifically" why he did not call Dukes to testify, referencing "trial strategy, why we call[ed] who we did." It is well settled that "a decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective assistance of counsel unless it is so unreasonable that no competent attorney would

have made the decision under the circumstances." (Citation and punctuation omitted.) *Sullivan v. State*, 308 Ga. 508, 511 (2) (a) (842 SE2d 5) (2020); see also *Swint v. State*, 250 Ga. App. 573, 574 (552 SE2d 504) (2001) ("[I]n the absence of testimony to the contrary, counsel's actions are presumed strategic[.]").

Here, we cannot say that no reasonable trial attorney would have chosen not to call Dukes, whose proffer indicated nothing regarding whether Jackson's and Lee's statements to police identifying Hughes as the assailant were based solely upon information from others,[6] as Hughes now argues on appeal. In addition, Dukes' statements that Jackson and Lee learned the identity of the assailant only based upon what other partygoers told them was, in any event, cumulative of Jackson and Lee's later, contradictory, sworn statements. See *Wesley v. State*, 286 Ga. 355, 358 (3) (h) (689 SE2d 280) (2010) (finding that "trial counsel's failure to present cumulative evidence through additional testimony does not amount to ineffective assistance"). Further, Dukes' testimony at the motion for new trial hearing was, as the trial court found, "self-contradictory" as to material facts — including whether Hughes arrived

---

[6] Hughes also argues that Dukes "was prepared to testify" that other people in the community went by the nickname "Tony Montana," but Dukes was not asked about and did not testify about this at the hearing on the motion for new trial, so this contention presents nothing for our review.

at the party before or after the attack. *Harris v. State*, 313 Ga. 225, 236 (5) (869 SE2d 461) (2022) (finding that where trial counsel "did not know" why she had not called a particular witness to testify, and where the witness's testimony at the motion for new trial hearing was inconsistent, "in light of the trial court's express findings about [the witness's] credibility, we cannot say that trial counsel was objectively unreasonable not to call [this] . . . witness"); see also *Swint*, 250 Ga. App. at 573-574 (finding counsel not ineffective where appellant failed to point to probative, exculpatory evidence that a witness who was not called at trial would have presented). The trial court did not err when it determined that trial counsel did not render ineffective assistance in this regard.

2. Hughes next argues that the trial court incorrectly applied the recidivist statute, OCGA § 17-10-7 (a), (c), and failed to exercise its discretion in sentencing. We disagree.

OCGA § 17-10-7 (a) provides, in pertinent part:

any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution *shall be sentenced*

*to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.* (Emphasis supplied.)

OCGA § 17-10-7 (c) provides, in pertinent part:

any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, *serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.* (Emphasis supplied.)

Hughes argues that although the trial court lacked discretion regarding the length of his sentence, and, pursuant to OCGA § 17-10-7 (c), he was not eligible for parole, the trial court "nonetheless had complete discretion to consider probating any or all [of] that sentence" under OCGA § 17-10-7 (a). See *Thompson v. State*, 358 Ga. App. 553, 558-559 (2) (b) (855 SE2d 756) (2021) (finding that "although OCGA § 17-10-7 (c) prohibits parole, that Code section does not take away the trial court's discretion to probate or suspend part of a sentence under OCGA § 17-10-7 (a)[,]" so

11

long as the punishment mandated by the statute governing the underlying crime does not prohibit suspension or probation). We agree that the trial court had discretion to probate the sentences associated with Hughes' crimes. See OCGA § 16-5-21 (2011) (aggravated assault); OCGA §§ 16-4-1 (criminal attempt), 16-8-41 (armed robbery); OCGA § 16-11-106 (possession of a firearm during the commission of a crime); and OCGA § 16-11-131 (2012) (possession of a firearm by a convicted felon). The question before us is whether the record shows that the trial court failed to exercise that discretion.

Hughes points to the following colloquy at the sentencing hearing, which occurred after the State reminded the trial court that it had filed a notice of intent to seek recidivist sentencing and asked the trial court to follow the State's recommendation that Hughes receive maximum incarceration.

THE COURT: Well, isn't that what your notice actually compels?

[THE STATE]: Yes, sir.

THE COURT: This [c]ourt is not allowed any discretion in light of the notice filed under [OCGA] § 17-10-7 (a) and (c).

[THE STATE]: Yes, sir.

12

Hughes raised the issue on motion for new trial, and in its order denying Hughes' motion, the trial judge stated that he "was well aware of the discretion granted to the [c]ourt,[7] pursuant to OCGA § 17-10-7 (c), regarding the period of confinement . . . for any sentence other than life[,]" recalling that when he was a practicing attorney, he had argued a case clarifying the application of OCGA § 17-10-7 (c).[8] The trial court's order also recognized that "the statute does not . . . mandate incarceration for any period of time." The trial court left Hughes' sentence unchanged. The State argues that, in similar cases, this Court has declined to remand

---

[7] We note that at sentencing, although the trial court did not inquire directly about evidence in mitigation, it nonetheless "allowed [Hughes] to present evidence in mitigation[,]" *Hatcher v. State*, 224 Ga. App. 747, 751 (2) (b) (482 SE2d 443) (1997), indicating its willingness to consider such evidence in connection with probation or suspension of the maximum sentence. See also *Knight v. State*, 221 Ga. App. 92-93 (470 SE2d 486) (1996) (finding that trial court's inquiry about mitigating evidence indicated its exercise of discretion).

[8] See *State v. Jones*, 253 Ga. App. 630, 632 (560 SE2d 112) (2002) ("This is not to say, however, that a trial court completely lacks discretion in sentencing a recidivist. Under OCGA § 17-10-7 (a), a trial court retains authority to suspend or probate a portion of the sentence. And, under subsection (c), a felon must 'serve the maximum time provided in the sentence of the judge.' Accordingly, it is conceivable that a felon would not be required to actually serve the maximum sentence if the trial court decided, in its discretion, to suspend or probate a portion of the sentence.") (citations omitted).

for resentencing where the trial court nonetheless indicated that it would decline to exercise its discretion. We have determined that:

> When a trial court has sentenced a recidivist to the maximum penalty under the mistaken belief that it had no discretion to suspend or probate any part of the sentence, we have remanded for resentencing. Here, however, *even if the trial court mistakenly believed it had no discretion at the sentencing phase, this was clearly not the case at the motion hearing*, when the trial court stated that, although it had discretion in sentencing, it would not exercise it to probate or suspend any part of [defendant's] sentence. Accordingly, remanding the case would be an exercise in futility as this court will not disturb a sentence within the statutory limits.

(Citation and punctuation omitted; emphasis supplied.) *Henderson v. State*, 247 Ga. App. 31, 32 (2) (543 SE2d 95) (2000). In *Walton v. State*, for example, the trial court told the defendant at the sentencing hearing that:

> You don't seem to be getting the message. Breaking into people's buildings, houses and stealing stuff is against the law. It's going to end up getting you killed or getting somebody else killed probably somewhere along the line if you don't quit that kind of stuff. Under the law of this State as I read it *I have no choice but to sentence you to twenty years to serve in the State penitentiary*, and that's what I'm going to do.

(Punctuation omitted; emphasis supplied.) 247 Ga. App. 717 (544 SE2d 540) (2001). This Court concluded that the trial court's use of the term "'no choice'" was not in reference to OCGA § 17-10-7 (a), because the trial court explained at the hearing on the motion that it "felt that it had no alternative other than to sentence Walton to confinement because 'he wasn't getting the message.' The [trial] court further stated that even if this Court remanded for a new sentencing hearing, the trial court would decline to probate a portion of Walton's sentence." Id. at 718.

Although the trial court's order in this case did not explicitly state in its ruling on Hughes' motion for new trial that it was declining to exercise its discretion, it explicitly recognized that it had discretion. By its actions in denying the motion and leaving Hughes' sentence unchanged, we conclude that the trial court declined to exercise the discretion of which it was clearly aware. See *Dozier v. State*, 306 Ga. 29, 31-32 (2) (829 SE2d 131) (2019) (finding that even if the trial court's belief about sentencing requirements was wrong at sentencing, "any error caused by its mistaken belief was harmless . . . because the record shows that the trial court *did* exercise its discretion" where it so indicated in its order denying a motion for new trial) (emphasis in original). "Accordingly, [Hughes] has no cause for complaint that the court, in the

exercise of its discretion, declined to probate a portion of the recidivist sentence." (Citation and punctuation omitted.) *Walton*, 247 Ga. App. at 718. As a result, we decline to remand this case for resentencing because doing so "would be an exercise in futility[.]" *Henderson*, 247 Ga. App. at 32 (2).

*Judgment affirmed. Doyle, P. J., and Watkins, J., concur.*